UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------X Docket#
UNITED STATES OF AMERICA,      : 09-cr-170(JFB)(AKT)
                               :
    - versus -                 : U.S. Courthouse
                               : Central Islip, New York
JOSEPH ROMANO,                 :
              Defendant        : May 18, 2010
-------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR CURCIO HEARING
BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:            **Benton Campbell, Esq.**
                                United States Attorney

                        BY: **Lara Treinis-Gatz, Esq.**
                            **Thomas Sullivan, Esq.**
                            Assistant U.S. Attorney
                            100 Federal Plaza
                            Central Islip, NY 11722



**For the Defendant**:             **Charles Carnesi, Esq.**
                                1225 Franklin Avenue
                                Garden City, New York 11530

                                **Paul Rinaldo, Esq.**
                                Grossman Levine & Rinaldo
                                108-18 Queens Blvd.
                                Kew Gardens, NY 11375



**Official Transcriber**:          **Rosalie Lombardi**
                                     L.F.


**Transcription Service**:         **Transcription Plus II**
                                3859 Tiana Street
                                Seaford, NY  11783
                                (516) 358-7352


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**Proceedings**

THE CLERK:  Criminal Cause for Curcio Hearing, United States of America v. Joseph Romano, under docket number 09-cr-170.

Counsel, appearances?

MS. TREINIS-GATZ:  Good morning, your Honor. Lara Treinis-Gatz for the United States.

MR. SULLIVAN:  Good morning, your Honor. Thomas Sullivan for the United States.

THE COURT:  Good morning.

MR. CARNESI:  Good morning, your Honor. Charles Carnesi appearing for Mr. Romano.

THE COURT:  Good morning.  Let me just correct something if I can.  This is really not yet a Curcio hearing even though it was pronounced and introduced that way.  I do have a referral order here from Judge Bianco saying that this matter is referred to me for purposes of conducting a Curcio hearing and this case was essentially set down this morning for purposes of the bail revocation proceeding.  However, some other issues have arisen here which means prior to my being able to conduct the bail revocation hearing, we have to resolve these other issues in the first instance.

So I see that the referral order for purposes of today has been signed or appears to be signed by the defendant, by Mr. Carnesi and by Mr. Sullivan, the

**Proceedings**

3

Assistant United States Attorney and I just want to confirm on the record that these are the signatures of the defendant and Mr. Carnesi; is that accurate?

MR. CARNESI:  Yes, your Honor, they are.

THE COURT:  All right.  Thank you.  I am going to go ahead and sign that order, as well.  All right.

The government has brought to my attention the fact that there may be a conflict of interest here with regard to Mr. Carnesi and his representation of Mr. Romano in this case.  I have throughly reviewed the submission that the government made on May 13.  I will give Ms. Gatz an opportunity now if you wish to highlight further any of this or bring any other additional information to my attention.

MS. TREINIS-GATZ:  Thank you, your Honor.  Just between the last time we were -- we wrote the submission, excuse me, and today, we discovered three more checks. So there are actually a total of six checks made out to Charles Carnesi from Collectible Coins.  There's an issue about whether all were cashed or not but there are six checks which we have provided to Mr. Carnesi today from Collectible Coins in the amount of $5,000 each.

THE COURT:  All right.  Anything else you want to add?

MS. TREINIS-GATZ:  On the Curcio issue?  No,

**Proceedings**

4

your Honor.

THE COURT:  No, all right.

MS. TREINIS-GATZ:  Thank you.

THE COURT:  And Mr. Curcio (sic), I am certainly -- I am sorry, Mr. Carnesi, I am going to give you an opportunity to address this in a moment.  Let me just go over what I intend to do today.

According to the case law that has followed upon Curcio, there are obviously three potential forms of a conflict here.  The government seems to take the position that it's the third form here of a potential conflict under Levy as opposed to the per se conflict or the actual conflict.  And obviously whether it's any of these three depends on the facts and circumstances of this case.

With regard to the existing case law, my research has directed me or put me in the direction of understanding that my first step here is really to conduct a proper inquiry and that inquiry obligation is actually outlined in a case called United States of America v. Chaim Levy.  The citation is 25 F.3d 146 (2d. Cir. 1994).  And in that case, the Second Circuit in outlining the district court's obligations in this regard said first of all that when a district court is sufficiently apprised of even the possibility of a

Transcription Plus II        Rosalie Lombardi

5

**Proceedings**

conflict of interest, the Court first has an inquiry obligation. The Court must investigate the facts and details of the attorney's interest to determine whether the attorney, in fact, suffers from an actual conflict, a potential conflict or no genuine conflict at all. And it cites a case called Strauss v. Leonardo at 928 F.3d 548 at 555, as follows; "In order to protect a defendant's right to conflict free counsel, the trial court must initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest."

Based upon the information that has been provided by the government here and in particular, I raise all of this for your benefit, Mr. Romano, because at some point I am going to have to make a further inquiry of you, but the government's raised an issue that -- and in fact as it -- attachments to the ex parte application for revocation of bail, the government attached copies of a number of checks drawn on a CCI account in Florida and the payee on those checks is Charles Carnesi, your counsel.

The government's indicated in its submission that during the investigation into Mr. Romano's violation of the terms of his bond, the government discovered a direct financial connection between Mr. Carnesi and CCI. Specifically, Mr. Carnesi received three $5,000 checks

6

**Proceedings**

from CCI dated November 20, 2009, December 1, 2009 and December 15, 2009, each payable to Charles Carnesi.

Moreover, telephone records revealed that between December 8, 2009 and February 3, 2010, 24 telephone calls were placed from a cellular phone registered to CCI to Mr. Carnesi's cellular phone. Similarly, telephone records reveal that on August 5, 2009, three telephone calls were placed from CCI's office to Mr. Carnesi's office.

Mr. Romano through Mr. Carnesi has now requested a bail revocation hearing purportedly to challenge the government's contention that he violated his bond.  And the government states that the potential conflict of interest arises as from the government's perspective, Mr. Carnesi as a potential witness who may be asked to answer at a minimum, the following questions. First of all, who sent Mr. Carnesi the checks from CCI's bank account, (2) what were the checks payment for, (3) who called Mr. Carnesi from CCI's cellular telephone and (4) who was called -- who called Mr. Carnesi from CCI's office.

Alternatively, the government states the defendant may wish to call Mr. Carnesi as a witness at the hearing to answer these or other questions in order to prove that he did not violate his bond and hence, the

Transcription Plus II        Rosalie Lombardi

7

**Proceedings**

grounds for the contention of the conflict of interest here.

So I think based on my duty inquiry first, Mr. Carnesi I am going to give you an opportunity to respond to the government's submissions since I know you haven't had an opportunity to do that yet.

MR. CARNESI:  Thank you, Judge. Judge, it's my recollection that there were five checks, not six.  I am not aware of a sixth check.  Just so the record is clear, none of the checks were cashed.  All of the checks were made out to me and were deposited into my account and that's how they were negotiated.

In terms of the number of telephone calls and the origin of those phone calls, frankly I would have no idea.  I received phone calls from time to time from Mr. Romano on a cell phone.  I have no knowledge as to who that cell phone was registered to, nor do I have any knowledge of that land line itself.  It's possible that I would have spoken to Mr. Romano if he called; I certainly would have answered the phone but I have never called that number, so I couldn't tell you what number that was. I have never called the number that was answered by a coin company in Florida.

As far as the -- and I believe this is the basis of the government's application and I can

8

**Proceedings**

understand that it requires further inquiry, certainly but frankly in terms of the attorney witness conflict, it's my position, Judge, that the telephone records speak for themselves. If there's a number that is registered to that company, and there's a record that shows that that telephone was used to call me or to call my office, that's it. There's really nothing more that I could contribute as a witness.

Similarly, with regard to the checks, the checks are made out to me. The checks speak for themselves. They were deposited into my account. My knowledge of how those checks came into certain individual's hands and what they were used for, as we represented to me, to my understanding of the law would be hearsay. And I wouldn't be allowed to testify to that in terms of what would be favorable to Mr. Romano.

So although I appreciate the need for further inquiry and I recognize that there is independent counsel here to advise Mr. Romano on those issues, frankly I don't believe that there is much of an issue with regard to my value as a witness. Thank you, Judge.

THE COURT: All right. I am going to let the government respond but let me tell you what my concerns are, Mr. Carnesi and looking at this as the information has been presented to me, when the bond was initially

9
**Proceedings**

issued for Mr. Romano, I made it clear that he was not to engage in any telemarketing activity of any kind. We haven't yet had our hearing on the revocation of his bail and that issue will be determined as we go forward.

But what I do have in front of me are checks drawn on a Florida account of a coin business which raises my radar at a minimum as to what was going on here. And the fact that your name appears as the payee on various checks drawn on that account raises the radar again. And so I have an obligation here, I believe, to make sure that Mr. Romano is aware particularly since we are going to have a hearing here, that his counsel of his choosing at this point, Mr. Carnesi, may well have a potential conflict here because Mr. Carnesi may be called as a witness in this revocation hearing by the government, let alone whether or not Mr. Carnesi decides that it's in your best interest, Mr. Romano, for him to testify in your behalf at the bail hearing. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Ms. Gatz, is there anything else you want to add on the record at this point?

MS. TREINIS-GATZ: No, your Honor. Thank you.

THE COURT: All right. As far as I am

Transcription Plus II          Rosalie Lombardi

10
**Proceedings**

concerned, the potential conflict of interest here has been clearly raised by the government and the documentation that's been provided to me supports that assertion by the government.

As far as a Curcio hearing is concerned, and we will have one, I am not going to do that today because one of the key things that I need to make sure of is that Mr. Romano has had an adequate opportunity to understand what the implications are from this potential conflict of interest. And so that he can make an informed and reasoned judgment and determination, whether or not he wishes to proceed with Mr. Carnesi as his counsel, understanding all of the ramifications here with regard to this potential conflict of interest having been raised.

And if the case law tells us nothing else from the Second Circuit, it says very clearly that you need to be given some time to digest this information and to make an informed decision. This conflict may be waivable . You have a Sixth Amendment right to counsel of your choosing but I need to be sure that if indeed you are considering a waiver of the conflict here in order to have Mr. Carnesi continue as your counsel, that that waiver is well-informed, well-reasoned and with the understanding of all of the ramifications that could

Transcription Plus II       Rosalie Lombardi

11
**Proceedings**

occur here.  Do you understand what I am saying?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  All right.  And I am going to ask you about this when you come back for the hearing and you're going to have to me in your own words what it is you want to do and why.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Under Curcio and the cases that have followed from it, if I discover that the attorney suffers from a potential conflict such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation, then I am to follow the procedures that are set out in United States v. Curcio in order to obtain directly from Mr. Romano here a valid waiver of his right if he chooses to waive that right to a non-conflicted lawyer.

So my concern here, of course, Mr. Romano, is that you understand the potential danger arising from this conflict and that is the government could call your attorney as a witness at the hearing -- at the bail hearing; do you understand that?

THE DEFENDANT:  Yes, ma'am, I do.

THE COURT:  All right.  And when you come back here for the actual Curcio hearing, I am going to ask you a number of questions but I am also going to ask you to

12
**Proceedings**

tell me in your own words how you wish to proceed and to be sure myself if you do intend to go forward with Mr. Carnesi as your counsel to satisfy myself that your decision is a well-informed and well reasoned one; do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: I am going to give you time, obviously, to think this through and I am going to also appoint independent counsel for you or what we refer to as Curcio counsel to insure that you have been given full information with regard to what this conflict can potentially mean in terms of ramifications for you and this application. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. I have requested that Mr. Paul Rinaldo, who I am appointing today as Curcio counsel for you, I am going to direct Mr. Rinaldo, who is here in the courtroom to meet with you and to take whatever time is necessary to provide you with the information to answer your questions and to insure as I said, that you have thought through this issue carefully and with the best information and advice that you can have available to you. Do you understand?

THE DEFENDANT: Yes.

THE COURT: All right.

13
**Proceedings**

And Mr. Rinaldo, I just want to put on the record that you have accepted the Court's appointment in that regard.

MR. RINALDO:  Yes, your Honor.

THE COURT:  All right.  Once I know that Mr. Romano's had an opportunity to meet with Mr. Rinaldo and had an opportunity further to assess how he wishes to proceed in this matter, I want to set this down for a Curcio hearing which I would like to do now and get a time frame for this, so that I realize that the underlying impetus here is the bail revocation hearing and I don't want to delay that any longer than necessary.

So Mr. Rinaldo, I will ask you how long you think it might take to do this?

MR. RINALDO:  Well, Judge, I can -- I believe the defendant is in the Nassau County jail.  I can see him one day this week and you could probably put it on next week.

THE COURT:  All right.

MR. RINALDO:  The 26th maybe or --

THE COURT:  Let's see.

MR. RINALDO:  I am available the 26th, the 28th, June 1 if it has to go into the next week.

MS. TREINIS-GATZ:  The 26th is fine.  I'm unavailable the 28th, your Honor.

Transcription Plus II        Rosalie Lombardi

14
**Proceedings**

THE COURT: The 26th is fine. Hold on just one second. All right. Let's put it on for 11 o'clock. Does that work for everybody on the 26th?

MR. CARNESI: That's fine.

MS. TREINIS-GATZ: Yes, Judge. Thank you.

THE COURT: All right.

MS. TREINIS-GATZ: Your Honor, do you contemplate if we resolve the Curcio issue on the 26th to go forward to the hearing on that date or are we selecting a second date for the hearing -- the bail revocation hearing?

THE COURT: No, it's my intention that once Mr. Rinaldo has had the opportunity to confer with Mr. Romano and Mr. Romano then will certainly have a few days to think that through after he has seen Mr. Rinaldo that we would proceed with the hearing on the 26th.

MS. TREINIS-GATZ: Okay.

THE COURT: All right?

MR. CARNESI: Yes, Judge. That's fine. Thank you.

THE COURT: All right. And Mr. Rinaldo, I might ask you if you can get here that morning and just speak to Mr. Romano one last time before we begin the proceedings; all right?

MR. RINALDO: Certainly.

Transcription Plus II        Rosalie Lombardi

15

**Proceedings**

THE COURT:  All right.  Is there anything further from the government?

MS. TREINIS-GATZ:  No, your Honor.  Oh, I am sorry, Mr. Sullivan has something.

MR. SULLIVAN:  Your Honor, we just in anticipation of the hearing, we've provided cellular phone records from CCI and also land line records and also a letter pursuant to Brady whether there's some witnesses who may be helpful at the hearing.

THE COURT:  Very well.  All right.  And that's been given to counsel?

MR. CARNESI:  Yes, Judge.

THE COURT:  All right.  Any further from the defense, Mr. Carnesi?

MR. CARNESI:  No, your Honor.  Thank you.

THE COURT:  All right.  Thank you, all.  We'll see you on the 26th.

(Matter concluded)

-o0o-

Transcription Plus II        Rosalie Lombardi

16

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **June**, 2010.



Rosalie Lombardi
Transcription Plus II

Transcription Plus II        Rosalie Lombardi