**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

LTG:TMS
F.#2007R01344

*610 Federal Plaza*
*Central Islip, New York 11722*

August 23, 2010

**VIA ECF**

The Honorable Joseph F. Bianco
United States District Court
Eastern District Of New York
100 Federal Plaza
Central Islip, NY 11722

Re: United States v. Joseph Romano, et al.
Criminal Docket No. 09-170 (S-2) (JFB)

Dear Judge Bianco:

Trial in the above-referenced case is scheduled for September 27, 2010. The government respectfully moves in limine for admission at trial of evidence of prior charged and uncharged acts of defendants Joseph Romano, Vincent Romano, Salvatore Romano and Kevin Wells (collectively "Defendants") in the above-referenced case. For the reasons set forth below, evidence of the defendants' prior acts is admissible pursuant to Federal Rule of Evidence 404(b) to prove the defendants' intent, preparation, plan, knowledge, and absence of mistake or accident in direct contrast to their proffered defenses.

I. Background

Defendants are charged in a two-count indictment with conspiracy to commit mail and wire fraud (Count One) and conspiracy to commit money laundering (Count Two). The indictment also contains two forfeiture allegations.

The indictment alleges that between August 2001 and November 2008, Last Quarter Coin, Inc., American Coin Company, Inc. and All American Coin Company, Inc. ("Subject Companies") were engaged in the business of telemarketing coins. The indictment further alleges that during the sale of coins the defendants, and others acting at their direction, falsely

informed the customers that substantial profits would be realized by investing in coins and induced customers to purchase and continue to purchase coins by falsely promising the customers that investors existed who would purchase the coins from the customers once the customers had purchased the "complete roll set." The defendants, and those acting at their direction, also misrepresented the grade or condition of the coins. The customers were falsely told that the Subject Companies used "in-house" graders, previously employed at major grading companies, to grade the coins. The customers purchased coins valued at substantially less than their purchase price.

## II. <u>The Proffered Evidence</u>

The government seeks to introduce evidence of (1) Joseph Romano's involvement in a fraudulent coin telemarketing scheme while on release in the above-referenced case; (2) Vincent Romano's threat made to a co-conspirator after the January 7, 2010 status conference in this case; (3) illicit drug use by Joseph Romano, Salvatore Romano and Kevin Wells with other co-conspirators employed at the Subject Companies; and (4) Salvatore Romano's use of two aliases when soliciting customers on behalf of the Subject Companies.[1] These prior acts are admissible under Rule 404(b) to show the defendants' intent, preparation, plan, knowledge, and absence of mistake or accident.

### A. <u>Defendant Joseph Romano's Fraudulent Telemarketing Scheme Committed While On Release</u>

On November 25, 2008, Joseph Romano was arraigned on a complaint before the Honorable A. Kathleen Tomlinson, United States Magistrate Judge. The defendant executed a $1 million dollar bond secured by two properties: a property located at 63/65 Montauk Highway, Copiague, New York and a property located at 67 Montauk Highway, Montauk, New York. As a condition of the bond, the defendant agreed to "refrain from telemarketing activities of any kind."[2] The defendant was charged in a two-count indictment by a grand jury on March 24, 2009.

---

[1] Arguably, using aliases in the manner they were utilized in the instant case is also admissible as evidence of the fraud conspiracy. However, in excess of caution we include this information in the motion.

[2] <u>See</u> Order Setting Conditions Of Release And Bond, <u>United States v. Romano, et al.</u>, 08-MJ-1054; ECF Docket #87.

As set forth in the Government's Ex Parte Motion to Revoke Bail filed on March 24, 2010, the defendant committed Federal crimes while on release, specifically mail and wire fraud conspiracy in violation of Title 18, United States Code, Section 1349 and violated the "ban on telemarketing" condition of the Order Setting Conditions Of Release and Bond of November 25, 2008 granting bail. Specifically, the defendant (1) conspired to form and formed Collectible Coins, Inc. (CCI), a company incorporated in the state of Florida, for the purpose of telemarketing coins; (2) conspired to open and opened an office of CCI at 1300 North West 17th Avene, Suite 218, Delray Beach, Florida; and (3) conspired to engage and engaged in the telemarketing of coins using high-pressure and deceptive sales tactics including making material misrepresentations to potential customers.

As part of this scheme, CW-1 is expected to testify that Joseph Romano, in order to assist CCI in making money, brought his best salesperson from the Subject Companies to train CCI employees and to work as a salesman for CCI. CW-1 hired this salesman to work for CCI at the suggestion of Joseph Romano. While at CCI, this salesman employed the same fraudulent "complete roll set" and investor sales pitches he used while at the Subject Companies, and taught these sales pitches to other CCI employees.

B. Vincent Romano's Threat Of CW-2

On January 7, 2010, after a status conference in this case, Vincent Romano told CW-2 in the hallway outside the courtroom that "We know there's a rat and if it's you, you will be going to the same jail as us and there's things we'll be able to do."

C. Illicit Drug Use By Joseph Romano, Salvatore Romano And Kevin Wells

At trial, the government would call several cooperating witnesses who are expected to testify that Joseph Romano, Salvatore Romano and Kevin Wells used illegal drugs with them while they were all employed at the Subject Companies. On some of these occasions, Salvatore Romano provided the illegal drugs.

III. Discussion

A. Standard

Evidence of uncharged "other" acts is admissible pursuant to Rule 404(b) if relevant to the issue of motive,

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. See United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988). There is a three-prong test for he admission of "other . . . acts" evidence under Rule 404(b): "Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. In addition, at the defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

The Second Circuit follows the "inclusionary rule" regarding the admission of other act evidence. United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)(quoting United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994)). This rule allows the admission of such evidence "unless it is introduced for the sole purpose of showing the defendant's bad character or unless it is overly prejudicial . . . or not relevant[.]" United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996). "[T]he government is required to establish only a similarly or some connection to establish that a prior act is relevant to one of the elements . . . of the crime charged." United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006); United States v. Paulino, 445 F.3d 211, 23 (2d Cir. 2006).

Notably, under this framework, subsequent bad acts are not subject to any more demanding standard of relevance than prior bad acts. So long as the subsequent bad act is offered for a proper purpose, and the evidence of it is such that a jury could reasonably find by a preponderance that the act occurred and that the defendant was the actor, it is relevant as a matter of law. "The fact that the evidence involved a subsequent rather than prior act is of no moment. 'Subsequent act' evidence may be admitted under 404(b)." Germosen, 139 F.3d 120, 128 (2d Cir. 1998); United States v. Ramirez, 894 F.2d 565, 568-70 (2d Cir. 1990) (applying relevancy criteria of United States v. Huddleston, 485 U.S. 681, 689 (1988), to subsequent bad acts).

B. Evidence Of Joseph Romano's Telemarketing Fraud Scheme Is Admissible To Establish His Intent, Plan, Preparation, And Knowledge Of This Scheme, And To Rebut Any Defense Of Mistake

The government intends to offer evidence of the defendant's involvement in CCI - not to show propensity - but as relevant evidence of the defendant's knowledge, intent, plan, preparation, knowledge and absence of mistake as his stated

defense to the instant charges is that he was unaware of the existence of the fraud and any misrepresentations made by him were unintentional. See Downing, 297 F.3d at 59 (2d Cir. 2002)("[Defendant] contended at trial that he neither knew about nor intended to facilitate any securities or wire fraud by producing false audit reports. [Defendant]'s own defense strategy therefore made evidence of his previous participation in a substantially similar scheme highly probative."); United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993)("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."); United States v. Mills, 895 F.2d 897, 907 (2d Cir. 1990)("Under Rule 404(b), relevant evidence of 'other crimes, wrongs or acts' may be admitted at trial to show that a defendant who claims that his conduct had an innocent explanation had the intent to commit the offense.").

The defendant denies that he intended to defraud anyone and asserts that any misrepresentations were made without his knowledge or assent. See J. Romano Mem. of Law 4 ("[D]espite the large volume of evidence thus far produced, the government offers nothing beyond his ownership of the supposedly offending businesses to demonstrate Romano's involvement in the charged conspiracy.")(emphasis added); id. 2 ("[R]omano, though he owned the businesses, which were located in New York, did not serve in an operational capacity and at relevant times lived in Florida—thus, Romano could fairly be termed an "absentee owner."); id. ("[T]hough the government identifies Romano as the owner of the three businesses at the heart of the charges, the government does not ascribe to him a managerial, operational, or sales role of any sort but rather identifies others as maintaining such functions.").

This defense is analogous to the facts in Downing, where the defendant was charged with conspiracy to commit wire fraud and securities fraud by preparing false audit reports. These audit reports were created to allow a company to be reinstated to a stock exchange so that the defendants could commit a pump-and-dump stock fraud using that company's stock. At trial, the defendant argued he was not aware of, and did not facilitate, any wire or securities fraud.

Based on the asserted defenses of lack of knowledge and intent, the Downing Court permitted the government, under Rule 404(b), to introduce evidence of a prior occasion where the defendant prepared financial statements in connection with a similar securities fraud. The Second Circuit upheld the district

court's admission of the prior acts, finding that the defendant's preparation of false financial statements on a prior occasion, involving a similar fraudulent scheme, "tends strongly to belie [defendant's] assertion that he did not understand the nature of the scheme for which he was being prosecuted." Id. at 59.

Here, Romano claims that while the Subject Companies contacted investors and solicited money from them, "[a]ccording to the government, the alleged fraud was perpetrated not by Romano but by his codefendants, who actually operated the businesses." J. Romano Mem of Law 2. By pleading not guilty, the defendant is denying that he had the requisite intent to commit any of the crimes alleged in the indictment. See United States v. Colon, 880 F.2d 650, 657 (2d Cir. 1989)("Strictly speaking, Colon's plea of not guilty to the charge that he aided and abetted Alvarado's sale of heroin put his state of mind in dispute, as the government bore the burden of proving that Colon had the specific intent that his actions bring about the sale."). The evidence that defendant established CCI, another coin telemarketing fraud scheme, which operated in a similar fashion to the Subject Companies, is probative of defendant's intent to defraud investors in this case. Evidence of Romano's involvement in CCI's fraudulent activities is relevant to establish that here, the defendant acted with the intent to defraud investors.

Both the CCI fraud scheme and the instant offense involve soliciting investors using the telephone, and knowingly making misrepresentations to the investors, including the "complete roll set" and investor pitches, clearly relevant to show intent to defraud. Moreover, at CCI, a salesman told John Doe #1 that it was to his advantage to build a "complete set" of coins and that others are interested in buying complete sets. Affidavit of Carl J. Vaccariello In Support of The Government's Motion to Revoke Bail, ECF Docket #143-1, at ¶ 20. The salesman also told John Doe #1 that CCI used its own in-house grading system. Id. ¶ 22. As these misrepresentations are so similar in nature they are admissible to rebut Romano's proffered defense of lack of knowledge or intent.

These acts are also admissible to demonstrate the defendant's "financial sophistication, his ability to execute complex schemes, and his ability to form intent to defraud." United States v. Zedner, 401 F.3d 36, 39-40 (2d Cir. 2005)(citing Downing, 297 F.3d at 59), rev'd on other grounds, 547 U.S. 489 (2006). Should Romano try to argue that he did not have the intelligence or sophistication to know about, or engage in, such a fraud, his involvement in a similar fraudulent scheme, after

having being arrested and indicted for committing a similar scheme, would rebut that argument.

Romano's intent and knowledge are also relevant to the non-fraud charge in the indictment. Count Two charges Romano with conspiracy to commit money laundering. To be found guilty of conspiracy to commit money laundering, a jury would have to find beyond a reasonable doubt that Romano agreed with others to conduct, or attempt to conduct, one or more financial transactions "with the intent to promote the carrying on of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(A)(i); see L. Sand, J. Siffert, W. Laughlin, & S. Reiss, MODERN FEDERAL JURY INSTRUCTIONS ("Sand"), Instruction 50A-5. Since Romano is challenging his intent to commit mail fraud or wire fraud by virtue of his not guilty pleas, see Colon, 880 F.2d at 657, it is likely he will challenge his knowledge that the money acquired from these same underlying actions constitute the proceeds of specified unlawful activity, i.e., mail fraud and wire fraud.

The probative value of the proposed testimony is not substantially outweighed by any prejudicial effect. Evidence of other acts is admissible under Rule 404(b) when offered for a proper purpose through the various types of evidence so long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged.'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992)(quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). The essential inquiry under Rule 403 for the admission of evidence of other crimes is whether it involves "conduct likely to arouse irrational passions." United States v. Smith, 727 F.2d 214, 220 (2d Cir. 1984).

Here, the loss amount involved in the defendant's fraudulent activity with CCI (approximately $1 million dollars) comes nowhere near the estimated $40 million dollars of fraud alleged in the instant indictment, see Indictment ¶¶ 28, 30. Also, the similarities between the CCI telemarketing fraud and the fraud scheme outlined in the Indictment is evidence that neither prior fraud involves "conduct any more sensational or disturbing than the crimes [] charged." Pitre, 960 F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d at 804 (2d Cir. 1990)). See also United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999)(upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with arrestee, choked another arrestee on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting

instruction"). For this reason, the nature of the crimes do not warrant exclusion of this evidence.

Finally, any potential prejudice to Romano can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered. See, e.g., United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991).

C. Salvatore Romano's Threat Is Evidence Of Consciousness of Guilt

Salvatore Romano's threat of CW-2, immediately after a status conference in this case, is admissible as evidence of the defendant's consciousness of guilt. Mickens, 926 F.2d at 1329 (admitting testimony about defendant's hand gesture, in the shape of a gun, made to a testifying witness in court because "an effort to intimidate a key prosecution witness was probative of Mickens' state of mind."). Salvatore Romano's statement, that "We know there's a rat and if it's you, you will be going to the same jail as us and there's things we'll be able to do," made in the courthouse, is strong evidence of the defendant's state of mind. It is also strong evidence he is concerned that CW-2, if he testified, would provide damaging testimony against all defendants. Here, the evidence of the threat is directly related to the conduct alleged in the Indictment; therefore, it is not likely to "arouse irrational passions[,]" Smith, 727 F.2d at 220, so as to require exclusion under Rule 403.

D. Evidence Of Drug Use By Joseph Romano, Salvatore Romano And Kevin Wells With Their Co-Conspirators Is Probative To Demonstrate The Nature Of The Conspiratorial Relationship Among The Defendants

The government seeks to introduce evidence that Joseph Romano, Salvatore Romano and Kevin Wells used illegal drugs with their co-conspirators. Several cooperating witnesses will testify that Joseph Romano, Salvatore Romano and Wells used illegal drugs with them and, on some occasions, Salvatore Romano provided the drugs.

Evidence of illegal drug use among co-conspirators is probative to demonstrate their relationship. United States v. Alonso, 740 F.2d 862, 869 (11th Cir. 1984)(admitting evidence of defendant police officers' personal use of cocaine under 404(b) because "the consumption of cocaine by the defendants strengthened their trust in one another."). The government believes that the defendants will attempt to argue that the acts

of the cooperating witnesses are not attributable to them, because they were not aware that these witnesses were making misrepresentations to potential customers of the Subject Companies. Evidence of illegal drug use by these defendants, with their co-conspirators, is probative to the jury's determination of the cooperators' conspiratorial relationship with the defendants.

E. The Use Of Aliases By Salvatore Romano Is Relevant To Establish The Defendant's Identity, And Is Relevant As Evidence of Consciousness of Guilt

The government anticipates that the evidence at trial will establish that Salvatore Romano used the aliases "Steven Anderson" and "Scott Miller" when working for the Subject Companies. The government seeks to introduce evidence of the defendant's use of these names to identify himself as the person who spoke with potential investors.

Salvatore Romano's use of false names is also relevant to show that he may have been seeking to avoid possible detection by law enforcement, should one of his potential investors discover his fraudulent conduct. See United States v. Anglin, 169 F.3d 154, 160 (2d Cir. 1999) (recognizing evidence that defendant give false name to police relevant to show consciousness of guilt).

IV. Conclusion

For the reasons set forth above, the Court should permit the government to introduce testimony concerning (a) Joseph Romano's establishment of a coin telemarketing scheme while on release in this case; (b) Vincent Romano's threatening of a co-conspirator after the January 7, 2010 status conference in this case; (c) illegal drug use by Joseph Romano, Salvatore Romano and Kevin Wells with other co-conspirators; and (d) Salvatore Romano's use of two aliases when soliciting customers on behalf of the Subject Companies, as they are clearly admissible under Rule 404(b) of the Federal Rules of Evidence to prove the defendants' intent, preparation, plan, knowledge, and

absence of mistake or accident, as well as establishing the defendants' relationship with their co-conspirators.

Thank you for your consideration.

Respectfully submitted

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By: /s/ Thomas M. Sullivan
Thomas M. Sullivan
Lara Treinis Gatz
Assistant United States Attorneys

cc: Clerk of Court (JFB)