**Meringolo & Associates, P.C.**
11 Evans Street
Brooklyn, NY 11201
(347) 599-0992 / (212) 202-4936 fax
www.meringoloesq.com

August 29, 2010

**VIA ECF**

Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 10007

Re: *United States v. Joseph Romano, et al*, 09 Cr. 170 (JFB)

Your Honor:

I appear in this matter currently as counsel for Defendant Salvatore Romano ("Romano"). Please accept this joint defense letter-brief on behalf of Defendant Romano, and Defendants Vincent Romano, Salvatore Romano and Kevin Wells (collectively referred herein as "co-Defendants") in opposition to the government's August 23, 2010, "motion *in limine* to introduce certain evidence" – specifically, prior bad acts and uncharged crimes evidence – at the upcoming trial ("Govt. Mem."). If permitted, the government's submission will create unfair prejudice against the Defendants that substantially outweighs the probative value of its request. For the reasons stated below, the government's motion should be denied, and the evidence contested should be precluded.

## INTRODUCTION

At the outset, we note a conspicuous logical gap in the government's submission. Namely, the government ticks off a "laundry list"[1] of unsubstantiated justifications for admitting so-called "other crimes" evidence – *e.g.*, it constitutes proof, necessary background

[1] *United States v. Nachamie*, 101 F. Supp. 2d 134, 143 (S.D.N.Y. 2000).

evidence and/or proof of knowledge and intent under Fed. R. Evid. 404(b) – but curiously, makes absolutely no attempt to link those justifications to the essence of other crimes it seeks to present. *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002). Instead, it asserts that **all** the proffered crimes are admissible under **any or all** of the given justifications, without specifying which justification applies to which crime, or how or why the justifications applies to any of the crimes. In other words, though the evidence at issue is offered for nominally permissible purposes, the government wholly fails to demonstrate its relevance to any "disputed" trial question. *Id.* at 136. This haphazard approach leaves the Defendants to speculate as to what the government's admissibility theory is for each proffered crime, making an informed response by Defendants difficult, if not impossible.

More egregious is the fact that the government's sweeping generalities effectively shift the burden of persuasion to the Defendants thereby forcing **the Defendants** to prove the other crimes inadmissible rather than requiring the **government** to establish admissibility of the crimes in the first instance. Such an inversion is patently improper and puts an unnecessary burden on the Defendants. *See* Govt. Mem. (acknowledging that government "'must explain in detail the purposes for which evidence is sought to be admitted'") (quoting *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) and citing *United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978)) (footnote omitted); *see also Nachamie*, 101 F. Supp. 2d at 137 ("Government bears the burden of demonstrating" admissibility under Rule 404(b)).

For this reason, the government's motion founders due to its failure to particularize the basis of admissibility for each of the proffered other crimes evidence. As the Second Circuit has repeatedly emphasized, the government may **not** invoke Rule 404(b) to "offer, *carte blanche*, any prior act of the defendant in the same category of crime." *Garcia*, 291

F.3d at 137; *accord United States v. Edwards*, 342 F.3d 168, 277 (2d Cir. 2003) (same). Despite the clarity of the Second Circuit's position in precluding such proffered other crimes evidence, the government's motion takes a *carte blanche* approach by seeking to admit such evidence. With this fundamental infirmity in mind, we examine the government's motion *in limine* in greater detail.

**THE PROFFERED EVIDENCE SHOULD BE PRECLUDED**

The government seeks to offer vague categories of uncharged crimes evidence for three purported purposes: (1) to establish the existence and nature of the charges; (2) to provide background for the charged conspiracy, explain the relationship among the alleged conspirators and complete the story of the crimes on trial; and (3) to demonstrate the Defendants knowledge and intent under Rule 404(b). *See, e.g.*, Govt. Mem.

We discuss each category of crime in turn.

**1. INTRODUCTION OF ALLEGED CRIMES BY DEFENDANT ROMANO THAT OCCURRED AFTER THE CHARGED CONSPIRACY MUST BE PRECLUDED FROM ADMISSION BECAUSE IT IS HIGHLY PREJUDICAL AND NOT PROBATIVE TO THE INSTANT CASE [2] [3]**

The government first proposes to prove through the testimony of cooperating witnesses (the "Cooperating Witnesses") that Defendant Romano and participated in the same exact conspiracy in Florida, as charged in the indictment (the "Indictment"), while out on bail. The submission of such extrinsic evidence is prejudicial to Defendant Romano and has no probative value. This effort by the government is a deliberate attempt to introduce

[2] The Court is aware that this conduct was a violation of Joseph Romano's bail conditions and not a criminal act, therefore if the government were allowed to present such evidence it would be more prejudicial then probative causing Joseph Romano to defend allegations that would undoubtedly cause a trial within a trial.

[3] The government's claim the acts in Florida are admissible to dispute the position that Joseph Romano had taken at his bail hearing at present is without merit. The Court is aware that there are audio and visual recordings made by Joseph Romano on a DVR. At the time of the bail hearing Joseph Romano's counsel was not privy of said evidence at the time of the hearing. Thereby, if Joseph Romano takes the proposed position presented at the bail hearing and noted by the government at trial the best evidence and most compelling evidence will be the evidence on the recordings of Joseph Romano on the DVR.

evidence in an effort to distract the jury from the relevant issues in the instant action and create a prejudicial effect among jurors against the Defendant.

The testimony alleging a conspiracy committed in Florida while out on bail by the Defendant Romano after the charged Indictment has no bearing on and is wholly superfluous to the Defendants' knowledge or intent in the current Indictment, and has no relevant probative value. Specifically, this evidence is not necessary for the jury to make the determination as to whether or not Defendant Romano committed any of the crimes alleged in the instant action. Rather, the only conceivable purpose among the government's admissibility theories is to illustrate Defendant Romano's relationship or to supply general background and context. However, sufficient admissible evidence exists to illustrate the relationships and provide the background and context to the jury that would not have the prejudicial and deleterious effect that such testimony regarding uncharged crimes would undoubtedly create on the jury. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* ("Weinstein"), § 404.21[3][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2004) ("the availability of other, less prejudicial, evidence on the point ... reduces the probative value of a given item of extrinsic evidence"); *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997) (court should "discount" item's probative value when "faced with less risky alternative proof going to the same point"); *Nachamie*, 101 F. Supp. 2d at 141-46 (excluding proffered 404(b) proof as "cumulative" where "other, less prejudicial evidence was available").

Furthermore, any minimal probity that such testimony might lend to the relationships and background is dwarfed by the enormous danger of unfair prejudice and significant potential for confusion and misleading effects this testimony would have on the jury. Pursuant to Fed. R. Evid. 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury…" Tying Defendant Romano to an alleged conspiracy that occurred years after the instant charged conspiracy could only have a prejudicial, confusing and misleading effect that Fed. R. Evid. 401 seeks to avoid. *See United States v. Mason*, No. S17 96 CR. 126 (JFK), 2000 WL 680361, at *2 (S.D.N.Y. 2000) (government must "**affirmatively show**" how proffered uncharged acts "related to" and "**involved the enterprise charged in the Indictment**") (emphasis supplied).

Contrary to the government's supposition, this evidence is also not admissible to prove knowledge and intent in the current Indictment and is not relevant to the instant case. First, in circumstances where knowledge and intent are undisputed and have been removed from the case by the Defendants' defense strategy, other crimes evidence is typically inadmissible. Judge Leisure's decision in *United States v. Paredes*[4] illustrates this point. As the Court observed, "other crimes evidence offered to prove…knowledge or intent may be admitted **only** after the defendant has asserted a state of mind defense putting knowledge and intent at issue."[5] Judge Leisure precluded other crimes evidence tendered on that basis because Defendant Paredes had not put knowledge and intent at issue. *See also, e.g., United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989) (defendant's denial of participation in crime removes intent issue from case); *Nachamie*, 101 F. Supp. 2d at 139 (if defendant "removes the element of intent or knowledge from a case, prior act evidence cannot be introduced" to establish that element); 2 Weinstein § 404.23[3] ("unless the defense raises lack of intent as a defense, <u>the prejudice of other-crimes evidence may outweigh its probative value"</u>); *cf. Garcia*, 291 F.3d at 137 (reversing conviction for improper admission of other crimes evidence even where knowledge and intent were squarely in issue.) Like *Paredes*, Defendant Romano has not put knowledge and intent at issue with respect to state of mind in

[4] 176 F. Supp. 2d 172, 176 (S.D.N.Y. 2001).
[5] 176 F. Supp. 2d at 176 (collecting cases) (emphasis supplied).

the instant case. Second, pursuant to Fed. R. Evid. 401, the alleged, uncharged crimes set forth above are attributable to a wholly separate indictment and therefore, have no relevance as enterprise proof in this instant case. Therefore, any testimony or other evidence related to alleged crimes that occurred after the charges in the current action which the government seeks to introduce to establish intent and knowledge with respect to the current action is irrelevant and wholly inadmissible.

The government's submission of any testimony or other evidence related to alleged, uncharged crimes by Defendant Romano which occurred after the current charges should also be precluded due to the highly prejudicial effect it would have on a jury. Any probative value the inclusion of such evidence might serve is substantially outweighed by not only this prejudicial effect, but also by the high probability of confusion by jury members as well as the misleading effect of convoluting separate and distinct charges with the crimes in the Indictment. Defendant Romano also has not offered a state of mind defense that would allow for the introduction of such evidence, making such evidence irrelevant and inadmissible.

**2. UNCHARGED THREATS OF WITNESS[ES] BY DEFENDANTS VINCENT AND OR SALVATORE ROMANO ARE UNFOUNDED, AND ARE HIGHLY PREJUDICAL TO AND BEYOND THE SCOPE OF THE INDICTMENT**

The government's motion seeks to introduce –

"On January 7, 2010, after a status conference in this case, Vincent Romano told CW-2 in the hallway outside the courtroom that "We know there's a rat and if it's you, you will be going to the same jail as us and there's things we'll be able to do." See page 3 paragraph B. The Court should be made aware that on page 8 paragraph C, the government states that:

"Salvatore Romano's Threat Is Evidence Of Consciousness of Guilt."

"Salvatore Romano's threat of CW-2, immediately after a status conference in this case, is admissible as evidence of the defendant's consciousness of guilt. *Mickens*, 926 F.2d at 1329

(admitting testimony about defendant's hand gesture, in the shape of a gun, made to a testifying witness in court because "an effort to intimidate a key prosecution witness was probative of Mickens' state of mind."). Salvatore Romano's statement that "We know there's a rat and if it's you, you will be going to the same jail as us and there's things we'll be able to do," made in the courthouse is strong evidence of the defendant's state of mind."

It is not clear from the government's motion whether it is alleging that Defendant Romano or Defendant Vincent Romano made this purported statement to CW2. Regardless, both Defendants Vincent and Salvatore Romano respectfully request the Court to preclude this testimony as baseless and self serving statements from CW2. Admission of this information will force the Defendants to have a trial within a trial by calling their respective defense attorneys to testify to the said prejudicial issue.

Additionally, the uncharged threats that allegedly occurred are a wholly different and distinct threat with respect to the treats that were alleged to have occurred pursuant to the Indictment, thereby making it irrelevant under Fed. R. Evid. 402 these uncharged "implied threat" crimes alleged to have occurred involved a totally different *modus operandi* than the conduct charged in the Indictment, and have no logical tendency to prove or disprove the existence of the charged conspiracy. Such testimony has no tendency whatsoever to make the existence of any fact of consequence to the government's case in chief either more or less probable than it would be without the testimony. The context of the government's case of CW2's allegations of threats lacks substantial relevance to any matter in issue and is therefore clearly inadmissible. To the extent the alleged threat is offered by the government on that theory, it should still be excluded as both irrelevant and confusing under Fed. R. Evid. 401 and 403. *See Mason*, 2000 WL 680361, at *2.

Sorting through the complexity of any of the Defendants' involvement in purported allegations irrelevant to the instant case would also embroil the jury in a string of collateral

and diversionary feelings and emotions towards the Defendants. This circumstance would create confusion in the mind of the jurors and have the likely consequence of unnecessarily extending the length of the trial. On this basis, the proffered evidence should also be precluded under Fed. R. Evid. 403 as an unnecessary waste of time. *See, e.g.*, *United States v. Schatzle*, 901 F.2d 252, 255-56 (2d Cir. 1990) (potential delay of mini-trial on contested evidence outweighed its probative value); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (similar).

For the foregoing reasons – because knowledge and intent are not in issue, it does not qualify as enterprise or conspiracy proof, and it would waste time and delay the trial – the government's uncharged crimes evidence, specifically the implied threats, is inadmissible in its entirety. *See generally Nachamie*, 101 F. Supp. 2d at 142, 144 (recognizing that evidence of similar crimes carries heightened risk of prejudice). *See, e.g., Garcia*, 291 F.3d at 137 (reversing conviction for improper admission of other crimes evidence where no similarity or connection shown); *United States v. Maisonneuve*, 954 F.Supp. 114, 116-17 (D. Vt. 1997) (excluding, as dissimilar to drug distribution charge, convictions for possessing drugs and stolen property); *United States v. Harris*, 805 F.Supp. 166, 182-84 (S.D.N.Y. 1992) (excluding evidence of uncharged corporate loan fraud as insufficiently similar to private loan fraud charge).

The Court should also be aware that the current case has over 250 hours of audio and visual surveillance tapes [that may potentially be admitted into evidence]. This material was obtained during the government's investigation of all of the Defendants in which the Cooperating Witnesses made numerous consensual recordings of Defendant Salvatore Romano and other co-Defendants concerning the Cooperating Witnesses. The availability of such unprecedented and infiltrating evidence should alone preclude the government from introducing any uncharged alleged crimes, including allegedly threatening witness[es]. *See* 2

Weinstein § 404.21[3][a] ("the availability of other, less prejudicial, evidence ... reduces the probative value of a given item of extrinsic evidence"); *Old Chief*, 519 U.S. at 182-83 (court should "discount" item's probative value when "faced with less risky alternative proof going to the same point"); *Nachamie*, 101 F. Supp. 2d at 141-46 (excluding proffered 404(b) proof as "cumulative" where "other, less prejudicial evidence was available").

Furthermore, admission of the evidence of alleged threatening of witness[es] by Defendants Vincent or Salvatore Romano is a blatant and calculated attempt by the government to incite the minds of the jury by using the 'guilt by association strategy' to defame Defendants' Vincent and Salvatore Romano character, and should therefore be precluded. *See, e.g., United States v. Wiley*, 846 F.2d 150, 156 (2d Cir. 1988) (error to admit proposed 404(b) evidence suggesting propensity to commit crime). The stark dissimilarity between the alleged uncharged crimes and the charged offenses included in the Indictment will have an unnecessary prejudicial impact on Defendant Vincent and Salvatore Romano character. . *See, e.g., Garcia*, 291 F.3d at 137; *Maisonneuve*, 954 F.Supp. at 17; *Harris,* 805 F.Supp. at 182-84. In short, this kind of testimony goes "directly and principally to character," is "the very evil that Rule 404 attempts to prevent." *United States v. Tubol*, 191 F.3d 88, 96 (2d Cir. 1999). To generalize bad acts alleged against a defendant into bad character and taking such information as raising the odds that he did indeed commit a charged bad act is improper. As Judge Breyer stated, "Although 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance." *United States v. Moccia*, 681 F.2d 61, 63 (C.A. 1982).

The government's introduction of highly prejudicial evidence will taint the fundamental fairness of the trial through its attempt to convince the jurors that a guilty verdict

would be morally reasonable rather than through proof of guilt of the charged crimes. It is likely that the jury's verdict will be materially affected if this improper testimonial and demonstrative evidence is admitted.

3. **A) EVIDENCE OF ILLICIT DRUG USE BY DEFENDANT ROMANO AND CO-DEFENDANTS WITH CO-CONSPIRATORS MUST BE PRECLUDED.**

**B) ALLEGATIONS THAT DEFENDANT ROMANO SUPPLIED ILLEGAL DRUGS MUST BE PRECLUDED.**

"The government seeks to introduce evidence that Joseph Romano and Salvatore Romano and Kevin Wells used illegal drugs with their co-conspirators. Several cooperating witnesses will testify that Joseph Romano, Salvatore Romano and Kevin Wells used illegal drugs with them **and, on some occasions, Salvatore Romano provided the drugs."** *See* page 8 Govt. Mem. Pursuant to Fed. R. Evid. 402 and 403, evidence of drug use or supplying drugs must be precluded on the grounds that it is irrelevant, creates an unfair prejudice against Defendant Romano and Defendants Joseph Romano and Kevin Wells, and serves no probative value.

The government's objective of introducing evidence of illegal drug use and the supplying of drugs is to establish the closeness of the relationship between Defendant Romano and Defendants Salvatore Romano and Kevin Wells, and the co-conspirators. However, any illegal drug use or the supplying of drugs alleged by the government to have been committed by any of the Defendants has no reference to the charges in the instant case and provides no probative value. It also clearly only serves to prejudice and inflame the minds of jurors. Such unfair prejudice could lead a jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence. See *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999) (cocaine-related conviction reversed

due to admission of evidence that the defendant abused his wife: "The domestic violence evidence in this case was particularly likely to incite the jury to an irrational decision because it was graphic and arresting.").

If the government seeks to establish the nature of the relationship between the Defendants and co-conspirators, it can accomplish this through *relevant* evidence that will not create a severe negative perception in the minds of jurors. For example, "the accomplice witness[es] certainly can describe [their] long-standing" relationship with the Defendants Salvatore and Vincent Romano without smearing them as threatening a co-defendant; "this will give the jury" an adequate "basis for understanding why [the Defendants ostensibly] trusted [them]." *Nachamie*, 101 F. Supp. 2d at 142-43.

Allowing the government to present evidence that "on some occasions, Salvatore Romano provided drugs" is clearly more prejudicial than probative because the implication unavoidably implies that Salvatore Romano is a drug dealer and or drug supplier. For these reasons – *i.e.*, because it is both cumulative and unduly inflammatory, – the proffered "conspiracy to commit wire fraud" evidence also fails Rule 403 scrutiny. This is particularly true in that "an attempt to tamper with a witness or threatening a co-defendant" represents qualitatively more serious conduct then the charges in the Indictment which include wire fraud and money laundering, *e.g.*, *United States v. Baez*, 349 F.3d 90, 94 (2d Cir. 2003) (uncharged conduct "less inflammatory than the murder charged in the indictment"); *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (uncharged background evidence involved conduct no "more serious than the charged crime"); *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (uncharged conduct no "more inflammatory than the charged crime"). (Emphasis Supplied)

Furthermore, the alleged illegal drug activity clearly serves to inflame the minds of the jury and should not be admitted. The suggestion of such pursuits is so highly prejudicial

to any defendant that is far outweighs any probative value it could have. Such unfair prejudice could lead a jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence. See *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999)(cocaine-related conviction reversed due to admission of evidence that the defendant abused his wife: "The domestic violence evidence in this case was particularly likely to incite the jury to an irrational decision because it was graphic and arresting.") For the reasons stated, this Court should deny the government's motion to provide evidence of Defendant Romano and Defendants Salvatore Romano and Kevin Wells alleged illegal drug use, and Defendant Romano's alleged illegal supplying of drugs.

## CONCLUSION

For the foregoing reasons, the government's motion *in limine* to include evidence that (a) Defendant Romano allegedly committed crimes after the alleged charges in the Indictment; (b) Defendants Vincent or Salvatore Romano allegedly threatened witnesses; and (c) Defendants Salvatore Romano, Vincent Romano and Kevin Wells allegedly used illicit drugs and or that Defendant Romano allegedly supplied drugs to his alleged co-conspirators, should be denied by this Court.

Respectfully,

By: /s/ John C. Meringolo
**JOHN C. MERINGOLO, ESQ.** (JM3487)
*Attorneys for Defendant Salvatore Romano*

Enclosures
cc: Defense Counsel
AUSA Lara Gatz