**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                          **REPORT AND**
      - against -                             **RECOMMENDATION**

JOSEPH ROMANO,                           CR 09-170 (JFB) (AKT)

                        Defendant.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      On June 8, 2011, the Ansanelli Law Group, LLP, counsel of record for the defendant Joseph Romano, filed a letter on ECF "as an application on notice to the government to permit counsel for the defendant to move to withdraw as counsel ex parte and under seal." DE 324. In that letter, Attorney Vincent Ansanelli stated that there are compelling reasons which justify the withdrawal motion, noting that the grounds include matters which fall "within the ambit of the attorney-client privilege, or may otherwise unnecessarily prejudice the defendant." *Id*. Judge Bianco granted the application. The motion seeking to withdraw as counsel for Joseph Romano, pursuant to Local Criminal Rule 44.1(a) and Local Civil Rule 1.4, was filed under seal. DE 330. Given the nature of the motion, Judge Bianco referred the matter to me to conduct a hearing and to issue a Report and Recommendation on whether the motion should be granted or denied. For the reasons which follow, I respectfully recommend to Judge Bianco that the motion be DENIED.

      Because the issues concerned in the motion would likely involve Joseph Romano's attorney-client privilege, I conducted the hearing *in camera* on June 23, 2011 with only the defendant Joseph Romano, his counsel of record, his wife and the U.S. Marshals present. The

Minute Entry for the proceedings on June 23, 2011 has been filed under seal, as have the papers in support of the motion. It should be noted that not every item of information contained in the sealed documents is privileged. For example, certain facts are not covered by the privilege and some of those facts are referenced below. This Report and Recommendation is limited to a discussion of the information considered by this Court, without breaching any attorney-client privilege, in reaching a determination on the motion. The balance of the information remains under seal.

**I.     THE APPLICABLE LAW**

Local Civil Rule 1.4 provides that

> [a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

Similarly, Local Criminal Rule 44.1(a) states that "Attorneys representing defendants in criminal cases shall file a notice of appearance in the clerk's office and serve a copy upon the United States attorney. Once such a notice of appearance has been filed, the attorney may not withdraw except upon prior order of the court pursuant to Local Civil Rule 1.4."

Courts in the Second Circuit have recognized that a client's "continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal" of counsel under Local Civil Rule 1.4. *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164, 166 (E.D.N.Y. 2006) (collecting cases). In addition, Rule 1.16(c) of the New York Rules of Professional Conduct provides that " . . . a lawyer may withdraw from representing a client when: . . . (5) the client

2

deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." N.Y. Rules Prof'l Conduct R. 1.16(c), N.Y. COMP. CODES R. & REGS, tit. 22, §1200.0.

Likewise, irreconcilable differences between a party and an attorney have also been held to be satisfactory and sufficient reasons allowing for the withdrawal of counsel. *See, e.g., Hallmark Capital Corp. v. Red Rose Collection, Inc.*, No. 96-CV-2839, 1997 WL 661146, at *2 (S.D.N.Y. Oct. 21, 1997); *Dowler v. Cunard Line Ltd.*, No. 94-CV-7480, 1996 WL 363167, at *1 (S.D.N.Y. June 28, 1996); *Sec. Exch. Comm'n v. Towers Fin. Corp.*, No. 93-CV-0744, 1996 WL 288176, at *3 (S.D.N.Y. May 30, 1996); *Emile v. Browner*, No. 95-CV-3836, 1996 WL 724715, at *1 (S.D.N.Y. Dec. 17, 1996); *Tufano v. City of New York*, No. 94-CV-8655, 1996 WL 419912, at *1 (S.D.N.Y. July 25, 1996); *Cosgrove v. Federal Home Loan Bank*, No. 90-CV-6455, 1995 WL 600565, at *2 (S.D.N.Y. Oct. 12, 1995) (quoting *Generale Bank, New York Branch v. Wassel*, No. 91-CV-1768, 1992 WL 42168, at *1 (S.D.N.Y. Feb. 24, 1992)); *McGuire v. Wilson*, 738 F. Supp. 83, 85 (S.D.N.Y.1990). Courts have granted such motions where it has been found that the relationship between the parties "has deteriorated beyond repair." *McGuire v. Wilson*, 735 F.Supp. 83, 85 (S.D.N.Y. 1990) (collecting cases). A party's refusal to communicate with counsel has also been held to constitute "irreconcilable differences." *Hancock v. County of Suffolk*, No. 06 Civ. 1716 2007 WL 4180805, at *1 (E.D.N.Y. Nov. 20, 2007).

"When considering whether to grant a motion to [withdraw], district courts must thus analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469, 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011). With these principles in mind, the Court now turns to the instant motion to withdraw brought by the Ansanelli Law Group.

**II.     DISCUSSION**

The docket of this case shows that the law firm of Ansanelli, Kugler & Svendsen, LLP[1] filed a "Consent to Substitute Attorney" form and "Notice of Appearance" on November 16, 2010. *See* DE 245. That date was after Joseph Romano had entered his plea and prior to his sentencing which has not yet occurred. The firm sought to be substituted for outgoing counsel, Charles Carnesi, Esq. According to Attorney Ansanelli, the firm was retained to advocate on Joseph Romano's behalf with regard to, among other things, the sentencing enhancements identified in the plea agreement as well as in regard to the United States Sentencing Guidelines as they impact Mr. Romano. In a letter motion dated November 8, 2010 directed to Judge Bianco [DE 247], Attorney Vincent Ansanelli represented that he was aware that Joseph Romano's sentencing had been scheduled for January 21, 2011 and he asked for a 60-day adjournment in order to "review the significant documentation relative to this matter and to adequately prepare for sentencing." DE 247. That motion was granted. It is the events which have occurred in the interim which prompted the motion to withdraw.

The Court has considerable discretion in deciding whether to grant an attorney's motion to withdraw as counsel. *See Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999). In addition to reviewing and considering the motion papers submitted, at the motion hearing itself on June 23, 2011, I gave Mr. Romano's counsel of record, as well as Mr. Romano himself, a little over two hours to place all of the information on the record which they wished to have me consider. Having reviewed the papers submitted by defendant Romano's counsel and having heard from

---

[1]     More recent documents filed in this case refer to the attorneys representing defendant Joseph Romano as the "Ansanelli Law Group, LLP" and that designation is used throughout this Report and Recommendation. *See, e.g.*, DE 324, 330 (under seal), 335

4

Mr. Romano himself as well as his counsel during the hearing, the Court finds that the matter can be distilled to two issues: (1) an asserted conflict of interest between counsel and client, and (2) legal fees.

### A.  The Asserted Conflict of Interest

Attorney Ansanelli asserted in his motion papers that Mr. Romano has frustrated the attorneys' efforts to advocate on his behalf.  *See* Declaration of Vincent W. Ansanelli ("Ansanelli Decl.") (filed under seal), ¶ 6.  After providing the defendant with an analysis of the issues for sentencing, counsel states that Mr. Romano had declined to accept the advice of his counsel.  *Id*. In addition, counsel maintains that Mr. Romano's dissatisfaction with his attorneys' advice has resulted in his refusal to pay the firm's outstanding fees.  *Id*. ¶ 7.

At the hearing, Attorney Mark Goidell, speaking for the Ansanelli Law Group, addressed the firm's concern over a growing mistrust between Mr. Romano and his attorneys.  He provided several examples which the Court has taken into account but which remain under seal.

In contrast, when Mr. Romano was subsequently given an opportunity to respond, he made reference to an associate working at the Ansanelli Law Group whom he described as

> an incredible human being.  She does her work. She's sincere, she is a humanitarian.  And you know what, I think their office does a great job and does not – I don't not trust them.  You know.  I don't not trust them. You know I, I can work very well with these people.

Further on,  I pressed Mr. Romano about the notion of a conflict that had been raised by his counsel.   Specifically, I told Mr. Romano that from the standpoint of the attorney-client relationship, he needed to tell me whether the relationship was so severely impaired from his perspective that his existing counsel could not effectively represent him for purposes of

sentencing. Counsel had brought up several issues in this regard to which Mr. Romano needed to respond in order for the Court to make an assessment. Mr. Romano replied that he did not believe there is conflict issue; rather, he believes the underlying issue is money. After discussing several additional matters, I asked Mr. Romano directly and specifically whether he believed he could continue to work to assist his counsel in preparing for his sentencing. His response was "Yes, I absolutely can."

Defendant's wife echoed those assertions.[2] At one point during the hearing, Mrs. Romano stated that "[w]e want to move forward with sentencing. . . . And we want to keep Mr. Ansanelli as counsel because we think he is doing, he did a great job, and he has been submitting stuff to the court."

At various times during the hearing, Defendant Romano stated that he was seeking a forum in which he could express his concerns regarding various issues. I gave him the opportunity to voice those concerns to me during the proceeding and he did so. In addition, I spent some time discussing with Mr. Romano the fact that while I understood those concerns to be of great significance to him, they were nonetheless peripheral to what Judge Bianco would be considering in coming to a determination of a reasonable sentence after considering the federal sentencing guidelines range and all the other factors and circumstances in his case and background. In particular, I informed Mr. Romano that Judge Bianco would likely be looking to the plea allocution, the Pre-Sentence Report ("PSR"), objections filed by his counsel to various

---

[2] The Court takes note that Karen Romano sent an email to Judge Bianco dated June 22, 2011 [DE 334, filed under seal]. The public docket entry for DE 334 states that "At this time, my husband and I do not wish to change counsel and want Ansanelli Kugler & Svendsen to continue to represent Joe through his sentencing."

items in the PSR, and legal arguments made by his counsel on his behalf, including but not limited to issues of mitigation, as well as supporting documents his counsel will offer.

In light of the concerns expressed by defendant's counsel regarding Mr. Romano's not accepting the advice of counsel, I posed the following question to Mr. Romano near the conclusion of the hearing:

> But the equally significant key to me here is whether or not you're in a position to take counsels' advice in terms of what they believe is in your best interest to give you the best foot forward at sentencing. . . . So you have to tell me that.

Defendant Romano gave the following response:

> Your Honor, I have been given my forum. I am satisfied. . . . And I want Mr. Ansanelli to represent me with mitigating circumstances. I have read most of the things that he has had. I have actually written a lot of it. And they have edited it. I'm very happy with it and I want to move forward. . . . I have every intention of giving this man every dime that is warranted. . . . I'm very happy with this man. I want him on . . . I'll try my best to get him paid. But we do need to move forward.

As his statements here show, defendant Romano is clearly *not* of the view that Attorney Ansanelli is unable to represent his interests in this case. *See Malarkey v. Texaco, Inc.*, No. 81 Civ. 5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989) (motion to withdraw denied where court found that although plaintiff had at various times during the litigation been somewhat dissatisfied with her attorneys' effort, she was not of the view that counsel was unable to represent her interests). To the contrary, Mr. Romano wants the Ansanelli Law Group to stay on board as his counsel. By way of a contrasting example, in *United States v. Up To $6,100,000 on Deposit in Account No. 15.5876 at Bank Julius Baer Co. Ltd,* 07 Civ. 4430, 2009 WL 1809992, at *5 (S.D.N.Y. June 24, 2009), Orrick Herrington & Sutcliffe moved to withdraw as counsel for

7

one of the claimants in a case – an indicted defendant in a related criminal case – asserting that the client had failed to pay the law firm's legal fees and failed to communicate with counsel. *Id*. In granting the motion to withdraw, the court found counsel had established that (1) the client failed to respond to all attempts by counsel to communicate with him by letter and telephone and (2) the client had not rendered payment on nine separate invoices spanning a full year. *Id*. at *6. That is not the case here. Mr. Romano has had regular communications with the Ansanelli Law Group – rather, it is the substance of those communications which prompted the instant motion.

Defendant Romano was given his "forum" at the hearing. He had his opportunity to "vent" and express his frustrations and he stated that he is "satisfied." Upon doing so, he confirmed to this Court that he wants his counsel to remain on his case, that he is prepared to accept his attorneys' advice, that he wants counsel to argue mitigation on his behalf, and that he wants to get on with his sentencing. Consequently, I find that the relationship between Mr. Romano and his counsel has not "deteriorated beyond repair" (*McGuire v. Wilson*, 735 F. Supp. at 85).

### B.     The Attorneys' Fees

According to Attorney Goidell, speaking for the defense team, as recently as a few days before the hearing, during a visit at the jail, Mr. Romano told Mr. Ansanelli that he refuses to pay an outstanding balance of $70,000 to the law firm. The Court initially inquired about the amount of the original retainer and Mr. Ansanelli stated that it was $25,000. Since that time, additional bills were issued on a monthly basis and those bills had been paid by Mr. Romano. Attorney Ansanelli confirmed that his firm had been paid $230,000 as of June 23, 2011, the date

of the hearing.[3] The firm asked Mr. Romano to pay an additional retainer going forward of $125,000, which rolled in the outstanding balance as well as monies that would be needed going forward. Attorney Goidell noted that there are tens of thousands of pages of documents to be culled, reviewed, collated, and reorganized to make a factual demonstration and presentation at a Fatico hearing and to conduct appropriate sentence advocacy.

Likewise, in his Declaration, Attorney Ansanelli sets forth the multiple tasks undertaken by his firm once the initial retainer agreement was resolved. As noted by Mr. Ansanelli, the Pre–Sentence Report recommends a variety of sentence enhancements under the Sentencing Guidelines arising from the calculation of loss, the number of victims, the vulnerability of victims, and the defendant's role in the offense. Ansanelli Decl. ¶ 5. Attorney Ansanelli states that each enhancement presents substantial factual and legal issues and the firm has worked diligently to present evidence and legal argument disputing the applicability or scope of each enhancement. *Id*. The firm continues to work on other issues related to sentencing, all of which counsel maintains results in the fees accrued which have to be paid.

Defendant's counsel focuses primarily on the district court's decision in *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d at 166 in which the court found that a client's "continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal" of counsel under Local Civil Rule 1.4. First, defendant Romano has not continued to refuse to pay legal fees. He paid the Ansanelli Law Group a $25,000 retainer and has paid invoices totaling an additional $205,000 since that time. Second, in light of defendant Romano's statements at the hearing

---

[3] Mr. Romano asserted that he had paid his prior counsel, Charles Carnesi, $200,000 for his representation.

(*e.g.*, "I have every intention of giving this man every dime that is warranted"; "I'll try my best to get him paid"), the Court finds that the circumstances do not constitute a refusal to pay.

There is another line of cases in the Second Circuit which defendant's counsel has not cited. "Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *Bennett v. Mukasey*, 525 F.3d 222, 224 (2d Cir. 2008); *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (observing that "notwithstanding the fee dispute," the law requires counsel to "continue to execute his professional and ethical duty to zealously represent his client") (internal citations and quotations omitted); *United States v. Hatfield*, No. 06-CR-0550, 2010 WL 291765, at *2 (E.D.N.Y. Jan. 11, 2010) (denying motion to withdraw since counsel had not demonstrated "more" than non-payment of bills). Having heard both sides at length during the hearing, this Court finds that the fee dispute at issue does not warrant granting the motion to withdraw in light of what the law firm has been paid in the seven months since it undertook defendant Romano's representation, Mr. Romano's statement of his intentions regarding payment, and the status of this case just prior to sentencing.

### III. CONCLUSION

After listening to both counsel and defendant Romano, this Court finds that the hearing on the motion in multiple ways "cleared the air" regarding the concerns on both sides. Having heard the extensive arguments of counsel and having listened to and questioned defendant Romano at length, this Court finds that there is no evidence at this point in time of irreconcilable ethical or tactical differences between the defendant and his counsel. *See Hatfield*, 2010 WL 291765, at *2; *Parker*, 439 F.3d at 104. Consequently, this Court further finds that there is no demonstration of the type of compelling circumstances which would be necessary to warrant

granting a motion to withdraw with defendant Romano's sentencing date approaching. The defendant's rights would be prejudiced by the delay attendant to replacing counsel which would "cause disruption to the Court's calendar and waste precious judicial resources."[4] *Ghesani v. Trico VIII Petroleum, Inc.*, No. 03 Civ. 9854, 2005 WL 3117485, at *1 (S.D.N.Y. Nov. 22, 2005); *United States v. Oberoi*, 331 F.3d 44, 47 (2d Cir. 2003) ("considerable deference" given to district court's denial of motion to withdraw as counsel especially when "the prosecution of the suit is likely to be disrupted by the withdrawal of counsel") (quoting *Whiting v. Lacara*, 187 F.3d at 320); *Malarkey*, 1989 WL 88709, at *2 (denying motion to withdraw when case "is on the verge of trial readiness").

For all of these reasons, I respectfully recommend to Judge Bianco that the motion to withdraw as counsel brought by the Ansanelli Law Group be DENIED. I make this recommendation mindful of the fact that the working relationship between counsel and client may, at the present time, be somewhat strained. However, Mr. Romano has stated that he will cooperate with his attorneys and will consider their professional advice in this matter and the Court has reason to believe that the parties together can properly prepare for defendant Romano's sentencing.

---

[4] The Court notes that Joseph Romano entered his plea of guilty on September 28, 2010, some ten months ago. His sentencing was set down for January 21, 2011 and has been adjourned four times since then, with good reason. Another change of counsel would only serve to prolong the proceedings, thereby prejudicing Defendant Romano's right to obtain some finality with regard to the terms of his sentence.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joseph Bianco, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
       July 21, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge