UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

UNITED STATES OF AMERICA, :

CR-09-00170

-against- :

United States Courthouse

JOSEPH ROMANO, : Central Islip, New York

Defendant. : January 17, 2012
10:00 a.m.

-------------------------------X

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: LORETTA E. LYNCH, ESQ.
UNITED STATES ATTORNEY
610 Federal Plaza
Central Islip, New York 11722
BY: THOMAS SULLIVAN, ESQ.
LARA TREINIS GATZ, ESQ.

For the Defendant: MARK E. GOIDELL, ESQ.
ADAM ANSANELLI, ESQ.
92 Broadway
Amityville, New York 11701

Official Court Reporter: Ellen S. Combs, CSR
100 Federal Plaza - Suite 1180
Central Islip, New York 11722
Phone (631) 712-6107
Fax (631) 712-6123

Proceedings recorded by mechanical stenography
Transcript produced by Computer

(The following took place at 11:08 a.m.)

THE CLERK: Calling case 09-CR-170, United States of America vs Joseph Romano.

Please state your appearances for the record.

MR. SULLIVAN: Good morning, your Honor.

Thomas Sullivan for the United States.

THE COURT: Good morning.

PHAO: Lara Treinis Gatz for the United States.

MR. GOIDELL: For the defendant, good morning, your Honor. Mark Goidell.

Your Honor, siting with me is Adam Ansanelli, my intern. He is a law school graduate, passed the bar, and is ready for admission. With the Court's permission, can he remain at defense table?

THE COURT: Yes.

And Mr. Romano is present. Good morning.

And Mrs. Romano, good morning.

MRS. ROMANO: Good morning.

THE COURT: As you know, the Court scheduled this because Mrs. Romano sent an email to the Court stating that there was some issue regarding a disagreement with how to proceed with a particular component of the sentencing. I provided the email to Mr. Goidell. And I didn't provide it to the government, because I thought it was a defense strategy regarding the best way to proceed

with respect to sentencing. But obviously given that the sentencing is scheduled next week, I scheduled this to see if this was going to delay the sentencing, because it was hopeful that we would be able to proceed next week.

I did receive, Mr. Goidell, your letter requesting that Judge Tomlinson, as she has done in the past, deal with this issue. And I did speak to her and she is available this morning to do that again.

But I first wanted to bring you before me. And I also just wanted to see if maybe we can work this out before bringing it to Judge Tomlinson. But we are going to proceed next week because if we need a hearing we can't proceed. If we can't proceed -- I would rather do it sooner rather than later.

Mr. Romano, without going into the details of this, have you seen your wife's email?

THE DEFENDANT: Yes, your Honor. I just read it this morning.

THE COURT: Before I say anything to Judge Tomlinson, obviously if this is not an issue for you -- it seems to be an issue for your wife -- but you're the defendant in this case. And I don't know if she's accurately reflecting your concerns or not. So before I send you to Judge Tomlinson, I just want know if there is some issue regarding strategy that you need to have

addressed or not?

THE DEFENDANT: No, your Honor. This -- you know, I actually spoke to my wife about this. And I don't want this to have to push off the sentencing. This is not something that -- it's just I thought in your computation of what my ultimate sentence would be, that there are some things that are on the peer side of the report that are erroneous.

And I think if we could depose, if you will, Mr. Aryai, he could shed some light on this, and but I really do not wish to push the sentencing off. And if it requires having to bring him in and it's going to push the sentencing off, I would rather not. I just, I have been at this county jail for two years. And quite frankly it's torturous. And I need to move on with my life.

THE COURT: Well first of all, I don't want to make decisions on the basis of timing. If there is some issue here, it should be addressed rather than you just saying, well I don't want to delay the sentencing. I mentioned that earlier. I'm not suggesting that, you know, we adjourn for months.

This is not the type of issue that would require any lengthy adjournment of the sentencing. It's just a strategy issue that would need to be resolved. And if there needed to be a hearing, a hearing could be scheduled

relatively quickly.

So it is not a good approach for you to say, well this is an issue for me but I don't want to delay sentencing because I don't want to be in the jail. Because as you know, sentencing is very important. And you don't get to redo it if it doesn't work out the way that you hope.

So the question is, apart from the issue of timing, is there an issue here or not? I'll deal with the issue of timing. Believe me, I'm going to proceed as quickly as you want to proceed. So I don't want you to think there is going to be a lengthy delay. But if there is some issue here, then it should be resolved. Because I don't want a claim later, after the sentencing, that you had asked your lawyer to do something, or you wanted something done, and because that wasn't done you believe it resulted in a higher sentence than you would otherwise have received. I don't want there to be those types of issues. I want your lawyer to do everything that you want him to do in connection with sentencing.

Now obviously he submitted a very thorough sentencing memoranda which I assume that you have seen. Correct?

THE DEFENDANT: Yes.

THE COURT: So I want there to be no issues

regarding his approach to sentencing versus what you want to have done with sentencing. I don't want there to be any issues. So if that is the question for today.

I do want to go back to one thing you said though, because I was going to ask the government today. Part of Mr. Goidell's sentencing memorandum addresses this disparity between probation's compilation of the guidelines and the plea agreement. And I didn't receive a letter from the government in response. But I just wanted to see what the government's position is.

I assume you're going based upon the calculations in the plea agreement?

MR. SULLIVAN: We are, your Honor. The plaintiff submitted that letter to the Court today, but we are standing by the guideline calculations.

THE COURT: Okay. And your letter today addresses the position regarding sentencing as well.

MR. SULLIVAN: It is the 3553 factors as well as the legal issues. With respect to the sentence, your Honor, obviously we're not taking a position. Probation has a different interpretation. And obviously we relay on the Court and probation.

THE COURT: So the government's position is that the advisory, the adjusted offense level is 34, criminal history category one?

MR. SULLIVAN: Yes.

THE COURT: And the advisory range of 151 to 188?

MR. SULLIVAN: Yes.

THE COURT: And my intention is to adopt that advisory range. So I don't know whether if this issue pertains to that, maybe that is helpful to you, Mr. Romano. But that is the advisory range for purposes of the sentencing.

Does that resolve the issue?

THE DEFENDANT: Like I had said, there are a couple of statements, a couple of things in the PSI report that, that aren't s exactly true. And there was also some things said over a period of time during some of these -- some of the status conferences which were issues that had to do with what led up to my incarceration, my involvement in Florida, what -- my problem is, is I would like Mr. Aryai to shed some light on my culpability in the involvement in Florida, which I know we're not bringing up. But something was said in this courtroom supposedly about what I did in Florida. And I want that to be --

THE COURT: Well, let me put that to rest as well too. I'm not going to sentence you about what happened in Florida after your indictment in this case.

THE DEFENDANT: Right.

THE COURT: That is not something I'm considering for purposes of sentencing. I considered it obviously for purposes of bail, because you violated the bail provision that you not engage in telemarketing activities. But to the extent that you believe that there has been some suggestion that you were involved in some fraudulent scheme after your arrest, that is not something the Court is considering.

Obviously you weren't charged with that. You haven't been convicted of that. So that would be no basis for me to make those types of findings. So it is not my intention to consider the post-arrest conduct for purposes of sentencing.

So if you're worried about those statements in that regard, you don't have to worry about that. Because that's not something I'm considering. Okay?

Let me ask the government though if you disagree.

MR. SULLIVAN: I think there are fact that were presented in the bail revocation hearing which we believe shows the defendant was involved, certainly involved in telemarketing activity. It was a violation of the defendant's terms of release.

We are submitting that as a 3553(a) factor under various theories. We do believe the evidence does show

the defendant was engaged in criminal conduct. Obviously the Court can neither use nor discount that behavior. But certainly Judge Tomlinson did determine by clear and convincing evidence that that violated the terms of the release.

THE COURT: Well again, there are two issues there. One is, did he violate the terms of his release by engaging in telemarketing activity.

And Judge Tomlinson made that finding, and I agree with that finding. That's why he is in jail now. So but that, along with my considering all of the factors in this case, would not be a reason to escalate his sentence.

The second issue is a separate issue; whether or not he engaged in the fraud while on bail. That would be a different issue, and could result in a higher sentence. But my understanding is the government is not pursuing that. We would have to have a hearing, a Fatico Hearing on that issue.

And so if the government is saying, yes, we want a Fatico Hearing, we want to prove that he was involved in fraud. Then we would need to have Fatico Hearing. Which surprises me, because obviously this was known to the government at the time of the plea, right? So this is not new conduct.

If that was your position, I assume that would be spelled out in the plea agreement with you.

What is the government's position on that second issue?

MR. SULLIVAN: Obviously under Section 3661 there is no limitation to what the Court can consider in determining an appropriate sentence. There was a hearing where Special Agent Hessle was cross-examined about evidence that was uncovered that led the government to believe that the defendant not only engaged in criminal conduct, but violated the bail on the telemarketing. That Hessle was subject to cross-examination. There is a record where we can provide that to the Court. It is on ECF, where the facts demonstrate the defendant did commit crimes while on release.

We're not asking the Court for additional, any sort of enhancement on that ground. But certainly under 3553(a) the Court has to determine the nature and characteristics of the defendant. And one of those is that the defendant after being released on this case, went out and not only violated the bail, but did so by engaging in conduct which we submit constitutes fraud.

MR. GOIDELL: Your Honor, may I be heard please with respect to this issue?

Your Honor, I'm going to reserve, depending upon

the government's submission at the time of the sentencing hearing. However, I do want to state one thing.

And that is that there was a full opportunity for the government to have presented evidence at that bail revocation hearing. The government did present evidence. And the government presented evidence as determined by Magistrate Judge Tomlinson that the defendant engaged in telemarketing.

There was no evidence presented that the defendant engaged in any criminality whatsoever. Again, there was no determination by Magistrate Judge Tomlinson that the defendant engaged in any criminal conduct while in the state of Florida.

So among other things, the government has had an opportunity to do so already. And in addition to that, despite the characterization now of setting forth such conduct only in terms of 3553(a) factors, it would indeed require a Fatico Hearing if the government intends to submit to the Court that the defendant engaged in criminal conduct following the commission of this act here.

THE COURT: Okay. I agree with --

MS. GATZ: Your Honor, we have a plea agreement here. We're not asking for an enhancement of anything. The agreement stands. We ask the Court to consider the facts under 3553(a) that the defendant violated the court

order by engaging in telemarketing activities. And that is it.

THE COURT: Thank you for clarifying that.

Because the second issue that might have to go before Judge Tomlinson, if it was going to be. If it was the government's position that he engaged in fraud, we definitely need a Fatico Hearing. I don't think there is any question of that.

And my question is, is the government pursuing that? And what the answer from Ms. Gatz just confirmed, is that they're not pursuing that. They're standing by the plea agreement.

To the extent that the government believes that the violation, the condition of bail engaging in telemarketing activity, even though it is legal, certainly is a violation of the Court's order. While it is certainly something which the Court can consider, in my view, and like all of the other factors, that is not something in particular in this case that is going to resolve in a higher sentence.

So, that is where we're at.

THE DEFENDANT: So your Honor, just for my edification; Mr. Sullivan stated that I did break an order of my bail condition. However, he indicated that I also was involved in some other type of fraudulent activity.

And we're saying, no, I violated the order of the bail condition. However, there was no other criminal activity.

THE COURT: Right. The government -- obviously you heard Mr. Sullivan -- the government believes that there was criminal activity associated with that. What I just said was, if that was something they were pursuing we would have to have a hearing on that. Because I would have to make a finding on that. And you would be able to dispute that.

What Ms. Gatz just confirmed, is that they're not pursuing that. And that is not something, therefore, that the Court is considering at all.

On the second issue of the fact that you violated bail, that, I certainly agree that you did.

Given all of the other factors in this case, that is not something that is going to result in an enhancement of your sentencing. Obviously it resulted in you being in jail pending sentencing.

But it is not something that the Court, that is going to impact your sentence in this case, given the other factors.

Does that make sense to you?

THE DEFENDANT: Yes, it does.

THE COURT: So does that resolve any issue that you have with regard to your desire to have some kind of

hearing, to call an agent with respect to the hearing, or any issues with respect to that?

THE DEFENDANT: I will not need this Brian Aryai statement, as long as, you know, like you said the government is going to stand by that plea, and everything we spoke about today.

The other issue is; would that mean that my sentencing will be scheduled for the 24th of this month, or is that going to --

THE COURT: No, I don't think, if the government is going to submit a letter today --

MS. GATZ: The only issue, your Honor is, we're still, because of what happened at Mr. Wells sentencing, we don't have the restitution issue totally resolved. So we are going to ask that the Court push this back one week so we can have that issue resolved, and we don't have to come back twice.

I think if we do it the week of January 30th, either the 31st or 1st, I think we can go forward and all issues will be resolved.

MR. GOIDELL: Judge, I have had an opportunity to speak to my client and to the government. And the 31st would be fine as long as it is in the afternoon.

THE COURT: Okay.

MR. GOIDELL: Judge, can we just make sure,

please, that the request for the subpoena for Mr. Aryai is being withdrawn?

THE DEFENDANT: Yes.

THE COURT: Is that correct?

THE DEFENDANT: Yes, that's fine.

MR. GOIDELL: Good enough.

THE COURT: I prefer to do it the following week just because I don't have enough time on the 31st. Make it the 7th, February 7th.

MR. GOIDELL: I'm not available on the 7th. I'm available on the afternoon of the 8th, and all day on the 9th, and as early as we can possibly do it on the 9th.

THE COURT: We'll look at the 9th then.

2:30 on the 9th.

MS. GATZ: That's fine.

MR. GOIDELL: That's fine.

THE COURT: Okay, just to confirm.

I know you said you're withdrawing your request for a subpoena Mr. Aryai, Mr. Romano. But I want to make sure you've reviewed your lawyer's submission and that there are no other issues regarding his submission and you want to raise that weren't raised. I want to make sure you're satisfied with his representation in connection with your sentencing.

THE DEFENDANT: I haven't reviewed the

submission, I reviewed the --

(Whereupon a discussion was held between the defendant and his attorney.)

THE DEFENDANT: Yes. I'm satisfied with that, your Honor.

I did have one other question.

THE COURT: Why don't you ask Mr. Goidell first. Just ask him, tell him what the question is first.

(Whereupon a discussion was held between the defendant and his attorney.)

THE COURT: Is there a question or not?

THE DEFENDANT: No, your Honor.

THE COURT: So you're going to be ready to proceed then on February 9th, Mr. Romano?

THE DEFENDANT: Yes.

There was one other issue. Is it at all possible, would you be able to transfer me to a different facility? Because the Nassau County Jail is -- it's horrendous.

THE COURT: No. I'm not going transfer you to another jail. I'm trying, obviously to have your sentencing as soon as possible. We will adjourn it for a week to avoid what happened with respect to Mr. Wells, among other things to resolve the issue of restitution.

So it's important that that issue, to the extent

that there is an agreement on the restitution amount, or at least the government has a final number to avoid having to have another proceeding after your sentencing to address the issue of restitution. So that is why we're adjourning it for a couple of weeks. But I'm not going to direct that you be transferred to another jail at this point. Okay?

MS. GATZ: Your Honor, the probation department also -- they received recently through the government -- they had not received the objections by defense counsel. They're also submitting an addendum. And I will explain to them about the court date to make sure they get it to the Court so we don't have any problems.

MR. GOIDELL: Yes, judge. For some reason the objections and the remainder of the submission by the defendant didn't make its way into an envelope addressed to the probation department. My apologies to the Court and the probation department. I understand Mr. Sullivan provided the probation department with my submission and my objections last week.

THE COURT: Obviously after receiving the addendum, if there is anything you want to address you can submit another letter. But in terms of, if they adhere to their prior determination as to the advisory range, obviously you have already heard what the Court 's

position is on that. Okay?

MR. GOIDELL: Thank you, judge.

And just to make it clear, just one other statement if I can, please, for the record.

That the objections to the sentencing memorandum, all submissions to the Court were expressly reviewed with my client prior to their submission.

THE COURT: Is that correct, Mr. Romano?

THE DEFENDANT: Yes, sir.

THE COURT: Anything else then, Mr. Goidell, you wish to raise today?

MR. GOIDELL: No. Thank you, judge.

THE COURT: Mr. Romano, anything else you wish to address today?

THE DEFENDANT: No, your Honor.

THE COURT: And from the government?

MR. SULLIVAN: I assume that there will be no Judge Tomlinson meeting today. Is that right?

THE COURT: Yes. I'll let her know that the issue is resolved, and there will be no proceeding before her.

Okay, thank you. Have a good day.

(The proceedings were concluded at 11:33 a.m.)