

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TMS                                          *610 Federal Plaza*
F.#2007R01682                                *Central Islip, New York  11722*

May 31, 2012

**By ECF and Mail**

The Honorable Joseph F. Bianco
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:  United States v. Joseph Romano
     Criminal Docket No. 09-170 (S-2)(JFB)

Dear Judge Bianco:

The government writes this letter, pursuant to the Court's oral order dated May 11, 2012, addressing the government's position on restitution regarding the above-referenced case.  As addressed in its February 22, 2012 letter (ECF Docket No. 415), the government proposed the following methodology for determining restitution:

(1) In cases where a victim's loss was based on a written professional appraisal, the government submits that the appropriate restitution amount should be the difference between the victim's purchase price and the appraised amount.

(2) In cases where a victim submitted an affidavit of loss stating that his/her loss is the total price of coins purchased from the defendants' companies, the government submits that the restitution amount should be calculated by reducing the loss amount stated in the victim's affidavit by 16.3 percent, the

weighted average of the professional appraisals known to the government, as shown below:

| Victim | Purchase Price of Coins Appraised | Appraised Value | Appraiser |
|---|---|---|---|
| L.B. | $14,000 | $1,900 | John Albanese |
| L.K. | $280,355 | $36,638 | Anthony Swiatek |
| R.N. | $532,000 | $105,000 | John Albanese |
| E.P. | $105,145 | $8,285 | Gary Adkins |
| Totals: | $931,500 | $151,823 | |

($151,823/$931,500) x 100 = 16.298%

(3) In all other cases, the government used the amounts stated in the victims' affidavits of loss.[1]

The court's restitution inquiry focused on the government's proposed methodology involving the use of a weighted average valuation of known appraisals to determine the average residual value of coins sold by Romano's companies.

Argument

The Second Circuit has approved the methodology proposed by the government. In United States v. Uddin, 551 F.3d 176 (2d Cir. 2009), the defendant was charged with food stamp fraud and conversion of public money arising from the fraudulent redemption of food stamps at his grocery store. On the issue of the defendant's loss amount, the government presented testimony at a Fatico hearing from a federal agent that, based on the size of the defendant's grocery store, and the agent's experience, transactions involving $50 or more were "highly unusual[,]" id. at 178-79, and that the agent's view was that "most or all of the food stamp redemptions in excess of $50 at [the defendant's] Grocery were fraudulent." Id. at 179. Using this $50 threshold, the government calculated the defendant's loss amount based on the number of transactions of $50 or more.

---

[1]   After further consideration, the government has determined that it will seek restitution for victims in categories (2) and (3), less the 16.3 percent weighted average residual value of the victims's coins.

On cross-examination, the agent admitted to observing the defendant's store during only one of four years when the defendant was allegedly committing this fraud. Id. Further, the government agent had no evidence that all transactions conducted at the defendant's store over $50 dollars were entirely fraudulent. Id.

The Second Circuit approved the district court's methodology even though the calculation was based on an assumption that was far from certain: "The [district] court's use of $50 as a general point of reference for likely fraudulent transactions, even if not based on precise data, was reasonably based on 'known' data such as the average dollar amount of food stamp redemptions at small-to-medium size grocery stores in New York City (around $12, according to [USDA employee] Torres), and the witnesses' observations of the size, inventory, and setup of Uddin's store."). Id. at 180.

The Second Circuit found that a district court, in determining a defendant's total loss amount, could use the average loss of a known sample, and extrapolate from that sample to determine the total loss amount: "A district court may make a reasonable estimate 'by extrapolating the average amount of loss from known data and applying that average to transactions where the exact amount of loss is unknown.'" Id. (quoting United States v. Bryant, 128 F.3d 74, 76 (2d Cir. 1997)(per curiam)).

Here, the government's known data is more certain than that the data relied upon in Uddin:  a weighted average of professional valuations performed on over $930,000 worth of coin purchases made by Romano's victims.  This weighted average method recognizes that, while Romano sold coins to his victims based on numerous misrepresentations, including the value of the coins, and their increased value when owned as a complete set, these coins do have a residual value.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /s/ Thomas M. Sullivan
Thomas M. Sullivan
Assistant U.S. Attorney
(631) 715-7865

cc:  Clerk of Court (JFB)
     Joseph Romano, pro se (By Mail)