UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA : 09-CR-170

-against- US District Court
Central Islip, NY

JOSEPH ROMANO,
Defendant. : August 24, 2011
- - - - - - - - - - - - - - - - X 2:50 pm

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: LORETTA E. LUNCH
United States Attorney
BY: THOMAS SULLIVAN, ESQ.
Assistant US Attorney

For the Defense: MARK GOIDELL, ESQ.

Also Present: Adam Ansanelli

Court Reporter: Dominick M. Tursi, CM, CSR
US District Courthouse
1180 Federal Plaza
Central Islip, New York 11722
(631) 712-6108 Fax: 712-6124
DomTursi@email.com

Proceedings recorded by mechanical stenography.
Transcript produced by CAT.

(Call to Order of the Court.)

MR. SULLIVAN: Thomas Sullivan for the United States.

MR. GOIDELL: Mark Goidell for the defendant.

With me is Adam Ansanelli, a recent graduate of Touro Law School, who sat for the bar exam but has not yet been admitted.

THE COURT: Good afternoon. And the defendant is present.

Good afternoon, Mr. Romano.

THE DEFENDANT: Yes. Good afternoon, your Honor.

THE COURT: As you know, this is scheduled to address the objections filed to the report and recommendation of Judge Tomlinson which recommend that I deny a motion by counsel to withdraw from the case. I obviously have reviewed, not only her decision but the objections and the relevant case law as well.

I did receive another communication, via email to chambers, from Mr. Romano which I provided to both sides. I placed it under seal in an abundance of caution because it does discuss issues that they are having with the firm, although there is no defense strategy in there so I provided a copy to Mr. Sullivan as well, but I wanted to make sure both sides saw that.

In terms of the issue, let me just see if I can help frame what the objection is as it relates to the relevant case law.

The Second Circuit has said that the nonpayment of legal fees, without more, is not usually a basis to have attorneys withdraw from representation. And Magistrate Judge Tomlinson correctly cited that principle of law.

There is this corresponding exception to that or elaboration of that standard, which is, if a client is deliberately disregarding their financial obligations or fails to cooperate with the lawyer, there are situations where the defendant just stops contacting the lawyer, communicating with the lawyer, then it is justified.

And essentially the objection is that Judge Tomlinson's premise in her decision was that the defendant was still willing to continue to pay fees, based upon statements that were made during the proceeding that she had before her, but counsel essentially believes that that is not accurate by the fact that he has not paid any additional money to date and therefore believes he does not intend to pay them any additional money.

Does that accurately state the objection, Mr. Goidell?

MR. GOIDELL: Yes, your Honor.

THE COURT: Before I address that, though, there is something you did put in the objections which I think is intertwined with this issue whether or not Mr. Romano is deliberately disregarding his obligations or not.

You said in your objection that the defendant does not dispute that the time expended by the firm and the charges rendered were necessary and appropriate. Mr. Romano does not allege that the time reported on the firm's invoices was inflated, exaggerated, fictitious, or unnecessarily expended, nor does defendant maintain that the rate of compensation was excessive.

Now, I obviously don't have the transcript of the proceeding before Judge Tomlinson so I don't know how much discussion there was of that before her, but just based upon what has transpired before me -- and I will ask Mr. Romano to confirm what it is he is disputing -- but certainly, well, Mrs. Romano, at a minimum, in her emails, for example the earlier one that she sent, refers to the exorbitant amount of money that has already been charged; a feeling of being extorted.

So it was my understanding that, in part, what this dispute is all about is that they do believe that they have paid an excessive amount of money already in connection with the sentence. That is why they, to date, have not paid any additional money.

But let me just ask Mr. Romano on that issue. I want you to focus. Are you disputing the amount of money that has already been charged to you in connection with the sentencing?

THE DEFENDANT: The answer to that simply is yes, your Honor, I am.

And, you know, it was my understanding during the last hearing that I didn't want it to become a mud-slinging contest. I was only stating that I can no longer pay this firm and I would need them to represent me. However, I have other issues with overbilling, and every single thing that is mentioned, there is something that I have a problem with.

And I have been through the bills and it looks like a phone book. And I have nothing but time to go through this. And I'm disputing a lot of things, which is something that I will -- I feel at the end of this that I will address that in the appropriate way.

THE COURT: Okay. But with regard to this issue of whether or not you intend to pay any additional money, what is your position on that?

THE DEFENDANT: Your Honor, if I had the money to pay them, I would pay them. I can live up to my obligations. I don't have the money to do that.

They claim that I have assets, I have access to

assets. Assets aren't exactly as tangible as liquid funds. Okay? And certainly, from where I sit, in the Nassau County jail, it makes it almost impossible.

My wife has tried many things. She has even sold an apartment, and we have taken all those proceeds and we paid the Ansanelli firm with that.

THE COURT: Let me ask the government to remind me, because I have no paperwork in front of me.

As part of his plea, is there a forfeiture obligation as part of his plea as well?

MR. SULLIVAN: There are numerous apartments the defendant has forfeited and other bank accounts and other properties. Yes.

THE COURT: Has that already been done?

MR. SULLIVAN: At the time of the plea, there was a preliminary order of forfeiture entered.

THE COURT: So I assume that that obviously affects your assets as well. Is that --

THE DEFENDANT: Yes, that does. They have seized certain properties; however, they are still under my control. We had them listed for sale because apparently, again, I'm not too sure about the way we are supposed to proceed with this, but we are supposed to now sell the properties? I never understood that. But my wife said it is our obligation to sell the properties.

But above and beyond that, we have other properties which were not seized that we are also trying to sell.

THE COURT: Okay.

THE DEFENDANT: So I don't know how to answer your question.

If you are asking if I have other assess? Yes, I absolutely did. Are you are they liquid? No, they are not.

THE COURT: Okay. I think -- and Mr. Goidell, I will give you a chance obviously to be be heard on this, but you heard what he said, and that was my understanding based upon the back-and-forth that has already occurred. They are disputing the amount that has been charged already. They believe they have been charged too much money in connection with the sentencing.

So the extent that is the premise of your legal position, and I think it is a necessary premise of legal position, it is not accurate. The reason, in addition to the fact that he does not have liquid assets, in his view; and I have not looked at his assets, obviously, to see what is liquid and what isn't because that hasn't been my focus; but one the other reasons they have not given any additional money is they believe that -- and I think the number $230,000. Is that what they have paid already?

MR. GOIDELL: That is approximately correct,

Judge.

But, if I can, let me just start out by indicating that there has, never once, been an objection, either in writing or verbally, concerning any of the detailed entries that the defendant has been provided with and Mrs. Romano has been provided with on a monthly basis. Never once. So whatever generalized objections are being articulated now are, at best, convenient.

More importantly, judge, the defendant's expressed dispute with the amount of the invoices is directly at odds with his intention, that he has expressed now to you and back at a time of the hearing to Magistrate Judge Tomlinson, that he fully intends to pay the outstanding invoices.

That was repeated, incidentally, by Mrs. Romano. I don't recall whether or not her statements were sworn or unsworn, but she was asked questions at the lectern by the Magistrate Judge, and she indicated clearly that she intended to pay.

Now, it is true that at one point in the proceeding Mr. Romano then said I would rather pay the victims, with the money that we have, than the attorneys. But nevertheless, it still speaks of a refusal to pay rather than a dispute concerning the amount that has been paid.

The amount that has been paid is a lot; however, it has not been disputed in terms of its necessity or appropriateness other than in the most generalized form at the most convenient time for the defendant.

THE COURT: Okay. Again, I don't know.

And you made reference to inconsistent words and testimony at the hearing and there may be a back-and-forth on that, but again I can tell you, it may have been generalized, but I am under the impression, since this dispute first came before me, that that is the core of their dispute, that they believe that the amount of money that they have been charged with the sentencing, which is substantial, $230,000 is a substantial amount that they have already paid for sentencing, that it is excessive and that is why they do not want to pay any more, have not paid any more at this point, in addition to whatever problems they are having liquidating additional money in order to pay.

I think clearly part of their unwillingness to pay at this point is because they believe they have paid too much money already.

Mr. Romano.

THE DEFENDANT: Your Honor, if I may. I don't know if Mr. Goidell is sworn before this courtroom. However, his indication is that my wife is making

something up, and that is not the case. Okay? And it is not $230,000. It is $280,000, plus $50,000 which was allocated to an investigator through a contract that I received from them.

And what is it at this point are we supposed to do? Are we supposed to start telling them on a regular basis we are unhappy with this or unhappy with that? We are trying to push to the point of sentence, and put this behind us. But the bills just keep coming and coming.

As a matter of fact, my wife just indicated to me, and I don't know how that is possible if they are not doing any work on my case, how are they generating these other bills that are just cropping up at $5,000 a pop? I don't even know.

I don't even receive a letter that I have a court date to appear at. I don't know where they are coming up with this stuff.

So again, I wanted to take a position that I don't want to sit here and I don't want to bad-mouth them. I just want them to do what they were paid to do. They were paid an exorbitant amount of money to do this. That is all I want. And.

I don't have the money now. And whether I prefer to give it to -- the accurate word, if Mr. Goidell wants to know, the word that comes out of my mouth, the

active word in that was, I would *"prefer*."

Yes, your Honor, I would prefer. I would prefer if the first attorney -- if I would have given all that money to the victims. I would prefer a lot of things, but that doesn't necessarily mean that I have it here. I don't.

THE COURT: Okay. Well, let me tell you my inclination, and I will give everybody a chance to persuade me that this is incorrect as a matter of law, as a matter of my discretion.

The case law is pretty clear that when a fee dispute arises in connection with a criminal case and is affecting aspects of that criminal case, that the court can, in its discretion, take ancillary jurisdiction over the fee dispute and try to resolve it.

This occurred in *Garcia v Teitler* 443 F.3d 202, Second Circuit 2006, where Judge Gleeson did exactly that. There was a dispute after a Curcio hearing and he resolved it. And the Second Circuit said it was well within his discretion to resolve that because the impact of that dispute was in connection with the criminal case.

And there are other cases similar to that. I will just cite one more. *United States v Brumer*, 420 F.Supp.2d 2006, Southern District of New York 2005, where Judge Wood had a hearing, a multiple-day hearing, to

decide how much an attorney was entitled to in connection with a fee dispute in a criminal proceeding.

It is my view that this is a fee dispute, even though it may be generalized. And although, at other times Mr. Romano or his wife have may have expressed some willingness to pay additional money, there is no doubt in the court's mind that the core of this is a dispute over whether or not the approximately $230,000 or $300,000, or whatever it is -- we will assume $230,000 for now because at least there is agreement on that; whatever the amount is, it is a substantial amount of money that is already paid since the plea.

I want to emphasize this, that this amount of money was paid post-plea. That was nine months ago, September. Almost a year. And so a substantial amount of money has already been paid.

The court sees this dispute as, although Mr. Romano continues to be satisfied with their legal representation and wants them to proceed in connection with his sentencing, that he disputes the fact that he has to pay additional money in order to have them provide that representation.

Is that accurate?

THE DEFENDANT: That is accurate, your Honor.

THE COURT: My intention is, under this line of

case law because I do believe this issue, to grant the request at this point without resolving this -- well, there are two options, I guess.

If I grant the request and new counsel had to come in, that would result in substantial delay in the sentencing of Mr. Romano, in my view, many, many months delay, and we have already had obviously a number of adjournments, to have different counsel get up to speed and to try to navigate some of the issues with other defendants regarding the scope of any hearings as relates to sentencing. But in my view, granting the request would result in substantial delay in sentencing.

In addition, if the court were to say I'm not going to resolve this, he can bring a lawsuit, for example, in state court, to try to resolve any dispute over this, and who knows how long that would take. So again, this court would then be trying to resolve whether or not he has money additional money as a result of the fee dispute.

It is not a satisfactory outcome to tell him to assert his rights in some other proceeding in state court or elsewhere because it will only delay this criminal case from going forward.

In addition, obviously, to the extent he claims he does not have the liquid assets to satisfy this

additional cost to have a new attorney to come in -- first of all, the current attorney, but certainly if a new attorney were to come in, it would require some additional money that would be extended on that new attorney's fee, and it would be unclear, in light of the forfeiture property that was taken, and also, and it hasn't come up obviously, but he is subject to restitution as well and he has mentioned a desire to give restitution to the victims, but the court also has to ensure that money is not needlessly being expended because it may take away ultimately from whatever is available to pay whatever restitution order the court ultimately imposes above forfeiture which is part of the plea agreement. And obviously if you were to run out of money available as a result of all these other obligations, then there are issues of whether or not CJA counsel would have to be appointed, and that obviously that is an additional expense to the court as well as the public.

So for all those reasons, it is proper for the court to exercise ancillary jurisdiction over this and to resolve the dispute. And the way I envision this happening is, and I don't know whether I would do it myself or ask Judge Tomlinson to do it, but there would be a hearing at which whatever records and documentation you have would be submitted, and then, if necessary, some type

of hearing would be conducted to determine whether or not that was an appropriate amount to have charged already and to try to resolve this dispute. That is the next step that has to be taken.

Obviously, Mr. Romano, because I just want to make sure you understand how this would proceed, whether it be Judge Tomlinson or I were to do this, were we to determine that you need to pay some additional money beyond what you currently have paid, if at that point you refuse to pay them, you would be breaking the law at that point because you would be deliberately disregarding your obligation to pay your attorney, and at that point they would be entitled to be relieved.

If, for example, we were to determine that either all of the previous fees have been justified at this point and therefore need to expend whatever additional money needs to be expended, or some portion, I don't know what the outcome would be. But if there was a determination that they should get more fees to cover whatever additional work they would bill, then you would have an obligation at that point, assuming you had assets, to pay that additional money; otherwise, I would have to relieve them under those circumstances. But that would be a deliberate disregard.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: So in terms of how I propose to proceed -- is that acceptable to you?

THE DEFENDANT: Yes, your Honor.

There are a couple of other issues that I'm anticipating; a couple of future problems that I would like to bring up.

THE COURT: Go ahead.

THE DEFENDANT: Number one is the de facto hearings. I just recently received an email, in fact my wife received the email and sent it to me, about how --

THE COURT: First of all, I want to make sure, because I don't know.

An email from who?

THE DEFENDANT: From Mr. Goidell.

THE COURT: I don't know if this is going to include privileged communications.

So, Mr. Goidell, should I have him disclose what is in this email?

MR. GOIDELL: Judge, the subject of the email directly concerns advice and strategy. It clearly would fall within the ambit of privilege.

Moreover, the disagreement, or rather in addition to the disagreement, or potential disagreement, concerning the propriety of a Fatico hearing basis here,

any disagreement may be prejudicial to his sentence.

I don't think it is an appropriate topic of conversation. If it should be discussed at all, perhaps it should be referred to the magistrate and sealed and done ex parte.

THE COURT: Let me just point out, it is not in your interest to discuss details of your strategy, certainly not in front of the government. And they believe, and I concur in this, given the fact that I'm going to be the sentencing judge, it is better to have those kind of things heard by the magistrate judge.

But I'm glad that you raise that, because even without hearing the details, I anticipated this concern or potential problem, and that is an entirely separate problem.

I have been assuming to this point that there is not a dispute regarding the substance of their representation of you. That is a separate issue. If the relationship gets to that point, then you can't have a situation where you are saying I'm not satisfied with their legal representation, they are taking positions that I believe are inappropriate and not in my interest, because then you are asking me to relieve them as counsel based on the substance. I can't have an attorney going forward with a client who is basically saying I disagree

with what they are doing.

To this point we haven't reached that, and there may be strategic issues that are going back and forth, and maybe that is what this email is about. So I don't want to go into the substance.

What I will encourage you to do is try to resolve them, but if those are unresolved, I am going to ask you to go back to Judge Tomlinson to work those out.

I also want to say I haven't heard what any decisions are with respect to the Fatico hearing. I know the government is currently having discussions with all counsel on that to see what the scope of any Fatico hearing would be.

O I only mention that to you to say that no decisions have been made, it is a fluid situation, and that may be why you are getting emails. But I think it is best that you try to see to it that whatever strategic issues you may be concerned about, that are raised in this email, to discuss them with Mr. Goidell and see if you can resolve those strategic issues.

Lawyers obviously have to speak to their clients, hear you out on what positions you want them to take, and, assuming they can ethically take those positions, they are normally resolved. I very rarely get into those types of situations because it is the

back-and-forth between the client and the lawyer, that communication, and they usually get resolved.

So I am encouraging you to do that. I assume you have been so focused on, there is a lot going on with respect to this dispute over fees, there hasn't been a lot of discussion about those issues.

THE DEFENDANT: There hasn't been any communication with me at all since --

THE COURT: I understand that. You should have a dialog about those issues. I understand nothing has been done, and the reason is, there hasn't been much communication going on.

I don't know what has been going on between the government and various counsel, but I have been waiting to hear back from them on whether they have reached some type of resolution on that. So you should certainly begin a dialog with them on that.

Does that factor into the ongoing discussions, Mr. Sullivan?

MR. SULLIVAN: Judge, the court should be aware that we filed a letter on or before July 29, and we did that to advise the court of the various positions of the parties.

With respect to Mr. Romano, we did indicate that Mr. Goidell was not requesting a Fatico hearing but that

he needed to consult further with Mr. Romano to determine whether in fact a hearing would be requested from the defendant.

THE COURT: Okay. So that position, as relates to you, is still open, is what I am telling you. So you can have a dialog with them on that.

I'm hopeful that some of this may be tied into the fact that the fee dispute is outstanding, hoping this can be resolved and you can move along more quickly. Okay?

Are there any other issues then?

THE DEFENDANT: No, your Honor. That is fine.

THE COURT: Okay. Mr. Goidell, what is your position with respect to having the court resolve the dispute?

MR. GOIDELL: Judge, I would appreciate an opportunity to take a look at the case law and whether or not supplemental jurisdiction is an appropriate exercise under these circumstances. I think pragmatically if it is, whether or not we object, then it seems to me that that is something that probably is better resolved later rather than sooner.

And the reason I say that is, it appears that one way or another at this point our motion to withdraw as counsel is not being granted. I hope I am not putting

words in the court's mouth that it is not intending at this point subject to some review later on, but it appears that we are going to be continuing our representation of Mr. Romano in terms of the sentence in this case. And if that is the case, then it is time to move on, first of all, after resolving, as stated, the Fatico issue, resolving the objections and submitting the documents to the court in support of sentencing mitigation which we intend to submit.

I would rather not be in the midst of a fee dispute with the client, rather, litigating a fee dispute with the client while that is being done.

So it is my suggestion that, if it is to be done, let it be tabled for some period of time. I understand that means that it may make the motion to withdraw somewhat academic. Nevertheless, I would prefer not to be simultaneously litigating a fee dispute while I am advocating for a client.

THE COURT: I'm certainly in favor of that because, as you heard, my concern is how it can potentially disrupt the orderly progression of his case.

So if you want to have a chance, I am obviously going to give it to you, to look at the law on this and submit a letter to me next week. But if your position is you are willing to put off any hearing or resolution of

the fee dispute issue and proceed on Mr. Romano's behalf in consideration with the sentencing and have that take place at the conclusion of the case, that seems to me to be preferable.

MR. GOIDELL: I believe that that will be the determination that will be made. It is subject to review of the case law, and I, quite frankly, anticipate continuing on the case with Mr. Romano.

I will go to see Mr. Romano. Again, understand, I've made more than 20 visits to Mr. Romano at the jail. But in any event, it is time to go see Mr. Romano again, for us to speak and try to see what we can work out in terms of this financial dispute as well as the strategy in the case.

THE COURT: Okay. Mr. Romano, that is I guess a counterproposal to my inclination, but I think it is actually preferable to mine, which is that they are willing to put off, they will submit a letter next week to make sure that they have had a chance to look at the cases I cite, but they are willing to put off your dispute with them, or their dispute with you, on the amount of the fees that you have already paid or any additional fees you owe to them, and proceed on your behalf in connection with sentencing.

Maybe you can resolve those issues without

having to have this hearing. But if not, what would happen is, they will proceed on your behalf at sentencing and then, following the completion of the case, to the extent there is some unresolved issue either on your end or on their end, then you would have this resolved in another court at that point. Is that --

THE DEFENDANT: Yes, your Honor, I think that is in the best interest of both parties.

THE COURT: Okay. So do you want an opportunity to be heard as to your position?

MR. SULLIVAN: No, your Honor. I have no position.

THE COURT: Okay. So obviously I'm going to encourage you.

I think what Mr. Goidell said is right on the money in terms of how I hope this will proceed. I have every expectation that they are going to continue to represent you as zealously as they can within ethical rules.

I have every reason to believe that, despite some of this past dispute over fees, they are going to communicate with you on those issues that you may have on strategy and do their best to represent you in connection with the sentencing. I have every expectation of that.

But you also, in the context of that, need to do

your part to try to make sure that the relationship doesn't deteriorate because of some of the history that we have had in this case. You should obviously have a discussion with them to try to see if you can resolve this fee dispute, but if you think it is interfering with your ability to focus on sentencing under the circumstances, you can put it off until after sentencing because they are agreeable to doing that.

But it is important that you avoid any lingering -- *animosity* may be too strong a word, but any issues about that. Focus on the sentencing. Okay?

So why don't you submit something next week. Put in a letter.

Do you want to do that, Mr. Goidell?

MR. GOIDELL: May I just look at my diary?

THE COURT: Mr. Sullivan, we don't have a date as to the others. There is no date?

MR. SULLIVAN: No. The way it was left with court, once the court received our letter on the Fatico, the court was going to set a date for the codefendants.

THE COURT: Okay.

MR. GOIDELL: Judge, in an abundance of caution, can we have two weeks?

THE COURT: Sure. If you reach a determination earlier, hopefully you can send a letter in earlier if you

reach a determination earlier than that.

We will say September 7. This letter will indicate that you consent -- well, I want you to first tell me whether or not you object to the court having ancillary jurisdiction over this.

I don't want to be in a position where you suggest that you are okay with proceeding, and then, when we get to the end of the case, you say you didn't think that I had jurisdiction over this. So obviously it would be the idea that the court has ancillary jurisdiction to resolve this.

So I want you to state whether you agree with that, and that you are agreeing to put it off until the conclusion of the sentencing. If that is what you will indicate, then obviously I will give you a few more weeks to speak with Mr. Romano and try to decide what your other position is with respect to the Fatico hearing, because I guess, from what Mr. Sullivan basically said, that is still outstanding.

That would be your next step. And once I hear what Mr. Romano's position is on that, my intention would be to have a conference with all of the defendants to address whatever those issues may be, whether we need a hearing or not.

MR. GOIDELL: Judge, it would be my intention to

address that third aspect in the letter as well. And we intend to speak with Mr. Romano prior to submission of the letter.

THE COURT: That is even better.

Any other issues today? From the government.

MR. SULLIVAN: No, your Honor.

THE COURT: Mr. Romano?

THE DEFENDANT: Just one other thing I'm just a little unclear about I wanted to ask you.

In the case of a Fatico hearing, whichever way we decide, I believe last meeting the prosecution said that they were going to bring witnesses, cooperating witnesses or something to that effect.

Do I get a list of that? And do I also have the capability of subpoenaing other people to this Fatico hearing?

THE COURT: Yes.

At a Fatico hearing, if the government were to put on any witnesses, similar to a trial, they would have to disclose those witnesses and provide discovery, 3500 material, the witnesses' statements, prior to the hearing.

So you would be entitled to all of that prior to the hearing. It is the same way that you get those things at the start of a trial when we pick a jury. The same process.

And the answer to your second question is yes, the government has the burden. At a Fatico hearing, they have to prove whatever facts they need to prove to enhance your sentencing. And you have the right to testify in your own behalf or to subpoena any witnesses that you think would be helpful to you, the same as a trial. Okay?

THE DEFENDANT: Thank you.

THE COURT: Anything else, Mr. Goidell?

MR. GOIDELL: No. Thank you.

THE COURT: Thank you.

Everybody, have a good day.

(Proceedings adjourned at 3:30 pm.)

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dominick M. Tursi, CM, CSR