UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA : 09-CR-170

-against- US District Court
Central Islip, NY

JOSEPH ROMANO,
Defendant. : September 28, 2011
- - - - - - - - - - - - - - - - X 2:20 pm

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: LORETTA E. LUNCH
United States Attorney
BY: THOMAS SULLIVAN, ESQ.
Assistant US Attorney

For the Defense: MARK GOIDELL, ESQ.

Also Present: Adam Ansanelli

Court Reporter: Dominick M. Tursi, CM, CSR
US District Courthouse
1180 Federal Plaza
Central Islip, New York 11722
(631) 712-6108 Fax: 712-6124
DomTursi@email.com

Proceedings recorded by mechanical stenography.
Transcript produced by CAT.

(Call to Order of the Court.)

MR. SULLIVAN: Thomas Sullivan for the United States.

MR. GOIDELL: Mark Goidell for the defendant.

Sitting with me at defense table is Adam Ansanelli, a recent graduate of law school, who is not admitted.

THE COURT: Good afternoon.

We have Mr. Romano. Good afternoon.

Is that Mrs. Romano in the gallery?

MRS. ROMANO: Yes.

THE COURT: Good afternoon.

As you know, I scheduled this conference. I received Mrs. Romano's September 19 email, which I provided a copy to counsel and placed under seal, addressed to both Judge Tomlinson and me. It raises a number of issues.

Then I received, Mr. Goidell, your September 22 letter, advising me that there is a conflict regarding sentencing advocacy and suggesting that I refer that matter to Judge Tomlinson.

Since we last met, I did get the September 2 letter where you memorialize what we had discussed last time, in which your firm agrees to continue to represent the defendant and await the final disposition of the case

before any further litigation regarding a fee dispute, and stating that, by doing so, you are not consenting to this court retaining ancillary jurisdiction over any such dispute if it arose at the end of the criminal case. So that is where things stand now.

I do have Judge Tomlinson available to meet after this conference on this ex parte, obviously involving defense strategy, which I think it would. But I want to address the other issue which was raised in Mrs. Romano's email regarding the fees, because if what she is stating is accurate, it is inconsistent with what my understanding was of the agreement that had been reached.

Specifically, she states that, and I will just read from the email now: The attorneys claim that I must pay part of the balance with them in order for them to continue to work, to continue working on the case and they are refusing to visit Joe again until we make a partial payment and agree to a schedule to pay the balance. And then it goes on to describe that situation further.

I want you to address that, Mr. Goidell, because I believe that is inconsistent with what my understanding was of what you had agreed to do.

MR. GOIDELL: Yes. Thank you, Judge.

I just want to make it clear with respect to the sequence of events.

My September 22 letter to you, which was copied to my client, was not in response to Mrs. Romano's September 19 email. I was aware, as of the 22nd or 23rd of September, that Mrs. Romano had sent an email.

The substance of it I saw for the first time today. I had asked Mrs. Romano on two separate occasions to please forward that to me. On the first occasion, she said that she would. On the second occasion, after I hadn't received it, she indicated to me that she was having difficulty retrieving and forwarding the message to me. So I didn't see it until just a few minutes ago.

Having said that, the accusation is wholly untrue. I have seen Mr. Romano three times in jail over the course of the last few weeks. We have, during those times, discussed potential Fatico issues and my recommendation to him concerning those.

At his request I sent a detailed email message to Mrs. Romano, which I know that she has shared with her husband, memorializing my advice concerning each of the potential sentence enhancements that may be imposed in this case as well as any possible reductions for acceptance of responsibility and otherwise. And we have continued to prepare ourselves for submissions which relate to sentencing. So the accusation is wholly untrue.

I want to say, in addition to that, I have never

said anything of the kind to Mrs. Romano or to Mr. Romano. When I just read this, I asked Mr. Romano directly: Are you alleging that I have said something like this to you? And I said you can speak for yourself, Joe, but he indicated to me and stated to me that, no, I did not say anything of the kind.

I have not. I would not. I never said anything of the kind to Mrs. Romano. I did say to Mrs. Romano, however, that there would be almost certainly a lawsuit, after judgment is entered in this case, concerning the payment -- or the nonpayment, rather, of legal fees.

THE COURT: Okay. So let me just clarify, so that Mrs. Romano understands and Mr. Romano understands on this fee issue.

I don't want to get into the strategy issue yet, but on the fee issue, Mr. and Mrs. Romano, based upon the representation by Mr. Goidell at the last conference, which he has confirmed here today, that the firm has agreed to continue to represent Mr. Romano, for the remainder of the case that is pending before me, without any additional requirement that there be paid additional money during that period. And as a result of that, I felt it was not necessary for me to intervene on this fee dispute as it relates to you and your attorney because they agreed to continue their representation.

So that is done. You will not have to pay money during their representation. What Mr. Goidell is saying -- and he has every right to say this, it is not inconsistent with that -- is, it can be and it sounds like it will be their position that they are entitled to additional money based upon the work that they are doing.

So by agreeing to put this off, they are not agreeing that they are not going to seek the money. They still have the right to seek whatever money they think they are entitled to based on the entirety of the representation.

So, at the conclusion of the sentencing in this case, if they believe they are entitled additional fees as a result of their representation, they can try to work that out with you. If there is not an agreement, they can sue you for those fees. And if you believe they have already taken too much money from you, you can sue them for the fees you have already paid to them.

So all those potential claims and options are all available to them and to you. But in order not to interfere with Mr. Romano's rights as relates to this criminal case, and to avoid the court not having a hearing over this, they have agreed that, without having the money up front, they will continue the representation in the case.

I don't think I can state it any clearer than that. I hope that was clear.

Do you understand that, Mr. Romano?

THE DEFENDANT: Yes, I understand that, your Honor.

THE COURT: Mrs. Romano, do you understand that?

MRS. ROMANO: Yes, your Honor.

THE COURT: Now, on the second issue, with regard to a conflict that Mr. Goidell believes may have arisen regarding sentence advocacy, I will only say this. I don't want to hear the details of that because I do think it better to have Judge Tomlinson hear and potentially mediate that dispute.

But in response to your questions in your email as to how it works, Mrs. Romano, with respect to something like that -- and this may be helpful for Mr. Romano to hear as well -- the bottom line in those types of issues is, obviously a client and an attorney are supposed to discuss potential strategies as it relates to a case, including whether to go the trial.

On this issue of sentencing, what arguments to make at sentencing, what motions to make: that is supposed to be the subject of a dialogue between the defendant and the attorney. And obviously, the attorney can make certain representations on those types of things:

I don't think we should make this argument; this could hurt you if you make this particular argument; this is not a strong argument; you should focus on this. That is the normal back-and-forth that attorneys and clients have when it comes to sentence.

If there is a dispute regarding that, typically the way it would be resolved is, ultimately the defendant gets to decide. There is a caveat to that, *I want to contest this fact or this legal position.* Ultimately, whatever advice the lawyer gives, it is up to the client to say: Well, even though you may think this is a bad idea, I want to pursue it anyway; and the lawyer, even if he or she may disagree with that approach or strategy, can still act as an advocate and do it because the client wants to do it.

There are two exceptions to that. One would be if the client was asking the lawyer to present factual information that is false or testimony that is perjurious. So if it is something that the lawyer knows is factually incorrect, a lawyer ethically cannot present that just because the client wants the lawyer to present that.

Similarly, if there was some legal position that is a completely frivolous legal position that the lawyer, in good faith and consistent with his obligation as an attorney, cannot make, that is the other exception. If it

is a legal issue where the lawyer would be put in a position making an argument that is completely false, that would create an issue for the lawyer as well.

But those are the outer bounds of the limitation between what a lawyer can do. Other than those situations, it is really, in an ideal world the lawyer and the defendant can see eye to eye on the strategy. But lawyers can proceed with a certain argument; even if they don't think it is the best one to make, they know how to make them and can do so.

I'm not telling Mr. Goidell anything he doesn't know already, so this is not for his benefit, it is for your benefit, because Mrs. Romano asks questions in there: Can you request a Fatico hearing and, if so, should the attorneys do it? And I'm trying to give you some guidance on how that type of dialogue would occur.

So those are only my general observations. I don't want to get into the details of it. But if you have any questions before I send you to Judge Tomlinson when she is available, I will see if I can answer them. If you have any questions of me, Mr. Romano, please ask before I send you to Judge Tomlinson.

THE DEFENDANT: Well, my only question was pertaining to what was previously said. I don't want to be in any, I don't want to speak about this, as you said,

you don't want to go deep into it. We will do that before the magistrate.

But Mr. Goidell has visited me three times at the jail. The third time he visited me, I terminated the visit. It lasted roughly about five minutes. Two other time before that were he was coming back.

The first time, he came and he showed me some Fatico, why we shouldn't go to Fatico hearing and he says I'm going to need your decision. That lasted a very short time. Then he came back the second time and he says I thought you were going to discuss this with your wife, and I said she was unavailable. I do not speak on the telephone, on an unsecure line, plus the environment that I'm in, I cannot easily speak about things. So he said: Well, I will come back when you guys make a decision, then, on that.

However, he also did indicate to me that, is there any way that we can get a partial payment? So my question is, if payment is not an issue until afterwards and then he could pursue it like a legal lawsuit, then why would you even bring it up in a meeting that you have with me that lasts roughly about five minutes? And I just want to point that out, that, you know --

THE COURT: Well, do you want to address that, Mr. Goidell?

MR. GOIDELL: Judge, I will say that I did indeed, when I spoke with Mrs. Romano and during the first jail visit that I had made -- the second one I don't recall; certainly the first one that I had with Mr. Romano, I did broach the fee issue and request payment or a payment schedule. That is true. I don't think I brought it up in the last jail visit.

In fact, I do recall having a specific conversation with Mr. Romano that there is nothing about the fee dispute that will impede my advocacy in any way, shape, or form; or that will limit it in any way, shape, or form.

As far as the other representations that were just made by Mr. Romano, they are either incomplete or untrue, and I will leave at that.

THE COURT: Look, the bottom line is, again, Mr. Romano and Mr. Goidell, I don't think, given what the agreement is and given that this obviously becomes a distraction for Mr. Romano, don't be discussing any fee dispute with him at this point.

There is a fee dispute. I don't think it is productive to keep raising that with him. Okay?

MR. GOIDELL: I certainly agree it is not productive and I agree not to raise it.

THE COURT: So the discussion of whether or not

to have a hearing or not have a hearing is not related to the fee at all, Mr. Romano. It can't be related to the fee. It would not be ethical for him to relate that to the fee. So that is the bottom line on that issue.

But again, on the issue of whether or not it is strategically in your interest to have a hearing on certain issues or not, you need to listen to his advice on that.

If you disagree and you want a hearing, as I told you, within the parameters that I have set, I'm sure he will go forward with whatever hearing you want to have.

But it is best if you have a full conversation about that. A five-minute conversation about it is not sufficient because it is always best obviously when the client is fully considering the lawyer's information before making big decisions like that.

The other thing I mention to you is, because I don't want to be an issue on appeal, whatever the decision may be and however this transpires in terms of hearing and sentencing, I don't want you to be raising, either before me or even the Second Circuit, that Mr. Goidell didn't have his heart in it; I would have been better off with a different attorney.

These are decisions you are making. He is your retained attorney. And I have been able to put aside the

issue of the fee dispute so that that does not become an issue. But you are making the decision to continue with having him represent you in this case. And if it becomes a situation where you are not seeing eye to eye with him, he still can go forward, but it is your decision to have him do that as opposed to haling another attorney do it.

I just want to make that clear. Nobody is forcing you to keep him as an attorney if you think another attorney would see more eye to eye with you on these issues than he would. That is your decision, and, you know, I express no view on that. That is up to you.

Do you understand that?

THE DEFENDANT: I understand, your Honor.

However, you know, although nobody is forcing me to go along with the Ansanelli firm, they are the firm that was already paid and I don't know how, if I had any other attorney, how I would pay them.

THE COURT: We have already discussed this the first time this came up. What I said to you was, if you could not afford an attorney, we had this whole issue of liquid assets, nonliquid assets. I don't know what your assets are, how much is already subject to forfeiture, restitution, and other things, and I don't what is what. But if you qualify because you have nothing left, you could have a lawyer appointed. And if you still have

assets left, you could seek to have another attorney represent you based upon the assets that you have left.

And, as I said, if you believe they are not entitled to the money you already paid, you can seek to recover that money from them in a lawsuit.

So you do have options. It is not as if you don't have options just because -- I understand the mentality: *I have already spent this much money; I'm just going to continue.* But if you believe it is not in your best interest to have his firm continue because of the history, you do have those options available to you, both of which have been done in other cases and are completely plausible options.

Okay? Do you understand?

THE DEFENDANT: I understand, your Honor. Just, I have trouble digesting that because I do know what our financial constitution is at this moment.

And again, I don't want to waste the court's time and I'm not laying down anything that I'm looking for an appeal or anything like that. I'm not saying I already spent the money so that is it. I have already spent the money twice on two different sets of attorneys, ranging somewhere upwards of thousands of dollars so it isn't about trying to get some kind of appeal so I want my money's worth out of it.

I don't feel that I do have an implausible alternative. Their firm, like I said, there were certain issues that I think they represented me fantastically but, you know, there is a lot of other things that I don't. I guess we are going to discuss in front of the magistrate. I don't want to get into them. But --

THE COURT: It is best, obviously, if you can resolve whatever these issues are that is fine. All I'm suggesting to you is if, at the end of the day, you feel that you will be better suited to have someone else represent you, that is ultimately your decision. Okay?

I can make sure that the fee dispute is postponed. But in terms of these issues that you have regarding what is in your best interests and strategy and things like that, to the extent that you are unhappy with their answers on that or their potential performance on that, these other options are available to you.

That is all I want to convey. But I think it is better to have you and Mr. Goidell tell whatever you need to tell Judge Tomlinson on that.

THE DEFENDANT: One other thing I want to bring up is, in the interest of fairness I would like to humbly request, if you could reinstate my bail, that would give me a chance to assist in my defense for these Fatico hearings.

THE COURT: We have been through the bail issue with your daughter's Communion, and my reasons for detaining you continue to apply.

To the extent that you believe obviously it would be easier to prepare for sentencing if you were out on bail, I understand that. I understand that reality. It is easier for the attorney to visit you. It is easier for you to visit their offices to review things. I understand that. I'm not denying that.

My issue, as it relates to granting bail or not, is whether you can be constitutionally represented and those things be dealt with while in a prison environment. And those things, while it is more difficult, there is no reason why you cannot receive full and complete representation by the Ansanelli firm or any other firm because you are incarcerated. There is no reason that you are not going to be able to effectively present your position at sentencing.

So that is not a basis to grant bail.

I will now have my deputy contact Judge Tomlinson's chambers and see if she wants to come in here, if that is easier. Off the record.

(Discussion off the record.)

THE COURT: We will take a short break to see if Judge Tomlinson wants to come in here, to save time.

Okay?

(Proceedings concluded at 2:50 pm.)

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_______________________________
Dominick M. Tursi, CM, CSR